**Opinion filed March 26, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00263-CV

_____

## IN THE INTEREST OF R.N.T.N., A CHILD

**On Appeal from the 318th District Court**
**Midland County, Texas**
**Trial Court Cause No. FM 56,063**

### MEMORANDUM OPINION

This is an appeal from an order terminating the parental rights of the mother and the father of R.N.T.N. Each parent filed a notice of appeal. We dismiss the father's appeal, and we affirm the order of termination.

### I. *The Father's Appeal*

The father's court-appointed counsel has filed a motion to withdraw and a supporting brief in which he professionally and conscientiously examines the record and applicable law and states that he has concluded that the appeal is frivolous. The brief meets the requirements of *Anders v. California*, 386 U.S. 738

(1967), by presenting a professional evaluation of the record demonstrating why there are no arguable grounds to be advanced. *See In re Schulman*, 252 S.W.3d 403 (Tex. Crim. App. 2008); *High v. State*, 573 S.W.2d 807 (Tex. Crim. App. 1978). In this regard, the practice recognized in *Anders* for court-appointed counsel to seek a withdrawal from a frivolous appeal applies to parental termination proceedings involving appointed counsel. *In re R.M.C.*, 395 S.W.3d 820 (Tex. App.—Eastland 2013, no pet.); *see In re K.D.*, 127 S.W.3d 66, 67 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

The father's counsel provided the father with a copy of the brief[1] and informed him of his right to review the record and file a response to counsel's brief.[2] In compliance with *Kelly v. State*, 436 S.W.3d 313 (Tex. Crim. App. 2014), counsel also provided the father with a form motion to file in this court to obtain access to the appellate record. We note that the father has not filed the motion in this court. We conclude that the father's counsel has satisfied his duties under *Anders*, *Schulman*, and *Kelly*.

Following the procedures outlined in *Anders* and *Schulman*, we have independently reviewed the record, and we agree that the father's appeal is without merit and should be dismissed. *See Schulman*, 252 S.W.3d at 409. Accordingly, we grant the motion to withdraw filed by the father's court-appointed appellate counsel. Additionally, we order counsel to notify the father of the disposition of this appeal and the availability of discretionary review in the Texas Supreme Court. Counsel is directed to send the father a copy of the opinion and judgment within five days after the opinion is handed down, along with notification of his

[1]We note that counsel informed this court that the certified mail sent by counsel to the father was returned. Counsel did not state that any first class mail had been returned, and the letter sent to the father by this court—when counsel's brief and motion to withdraw were filed—has not been returned.

[2]By letter, this court granted the father twenty-one days in which to exercise his right to file a response to counsel's brief. The father has not filed any response in this court.

right to file a pro se petition for review under TEX. R. APP. P. 53. Likewise, this court advises the father that he may file a petition for review pursuant to TEX. R. APP. P. 53.

## II. *The Mother's Appeal*

In her appeal, the mother presents eight issues in which she challenges the legal and factual sufficiency of the evidence to support the trial court's findings in support of termination.

### A. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to

the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that the mother had committed three of the acts listed in Section 161.001(1)—those found in subsections (D), (E), and (O). Specifically, the trial court found that the mother had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being; that the mother had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being; and that the mother had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(2), that termination of the mother's parental rights would be in the best interest of the child.

*B. Evidence and Analysis*

The record shows that the child at issue in this appeal, R.N.T.N., was five years old at the time of the final hearing on termination and that he had spent more than one-third of his life in the care of the State. The child was first removed from

4

his parents' care in January 2011, and after the mother completed the services required by the court, the child was returned to her in August 2012. He was again removed from his parents' care in May 2013, although the Department began looking for the family in November 2012 based upon several reports of neglectful supervision of the child. The problems in 2013 were the same as those in 2011: the parents' use of methamphetamine, domestic violence between the parents, and poor living conditions. The mother had a significant history of drug use, including alcohol, marihuana methamphetamine, cocaine, and crack cocaine. But her drug of choice was methamphetamine.

The 2013 removal was the Department's "fifth involvement" with the mother. Her older children were first taken into custody by the Department in 2004; the issues in 2004 were also methamphetamine use and domestic violence. At the time of the removal in 2013, the mother admitted that she had been hiding from the Department and that she had begun using methamphetamine again only three months after the child was returned to her. The evidence also indicated that the parents' living conditions were poor, that the parents continued to engage in domestic violence, and that domestic violence occurred in the child's presence. After his removal, the child described the family's home as dirty, and he said that his father had broken pieces of the house, that his parents fought, and that his father hit him when he tried to protect his mother.

Although the father had been abusive toward the mother in the past, she was adamant that "people can change" and that she wanted to continue her relationship with the father when he got out of prison, get the child back, and be a family. The parents admitted that their abusive relationship endangered the child. The mother said that the father was violent when they "were using drugs" and that he "acted enraged" and, on more than one occasion, hit her in the face and head. The police had been called to the parents' domestic disputes five or six times.

Although there was evidence that both parents loved the child and were bonded with him, the evidence indicated that the parents were either unable or incapable of providing a safe, stable, drug-free, and violence-free home for the child. The Department's plan for the child was termination of the parents' rights and unrelated adoption. The Department had located a permanent home for the child. The child had met the prospective adoptive parents and would be transitioned to the adoptive home from his foster home. The foster parents were not willing to adopt the child because they were afraid of the father.

### 1. Mother's Conduct

There was clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the mother engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child. FAM. § 161.001(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Domestic violence may constitute evidence of endangerment. *Id.*; *C.J.O.*, 325 S.W.3d at 265. The evidence showed that the mother and father engaged in domestic violence in the child's presence and that the mother used methamphetamine while responsible for the care of the child. Based on the record in this case, we hold that the evidence

was legally and factually sufficient to support the trial court's finding under Section 161.001(1)(E). The mother's fifth and sixth issues are overruled.

Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required and because we have held that the evidence is sufficient to support the trial court's finding under subsection (E), we need not address the mother's third, fourth, seventh, and eighth issues in which she challenges the findings made pursuant to subsections (D) and (O). *See* TEX. R. APP. P. 47.1.

### 2. Best Interest

In her first and second issues, the mother challenges the finding that termination of her rights would be in the best interest of her child. We hold that, based on clear and convincing evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in the best interest of the child. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the child; the emotional and physical needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the mother's history with the Department; the mother's continued drug use, despite having completed her services in the past; the parental abilities of the mother; the instability of the mother's home; the family's history of domestic violence; the stability of the child's placement; the plans for the child by the Department; and the acts and omissions indicating that the parent-child relationship was not a proper one, we hold that the evidence is sufficient to support the finding that termination of the mother's parental rights is in the best interest of the child. *See id.* The mother's first and second issues are overruled.

7

### III. *This Court's Ruling*

The motion to withdraw filed by the father's court-appointed counsel is granted, and the father's appeal is dismissed. We affirm the trial court's order of termination.

MIKE WILLSON

JUSTICE

March 26, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.