

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-17-00102-CR

_____

DEANDREA PHILLIPS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 85th District Court
Brazos County, Texas
Trial Court No. 14-04144-CRF-85; Honorable Kyle Hawthorne, Presiding

July 25, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Following pleas of not guilty, Appellant, Deandrea Phillips, was convicted by a jury of two counts of aggravated robbery, both with an affirmative finding regarding use of a deadly weapon. The convictions were enhanced by a prior felony conviction for sexual

assault.[1]  The trial court assessed punishment at sixty years confinement on each count, ordered to run concurrently.  In presenting this appeal from both convictions, counsel has filed an *Anders*[2] brief in support of a motion to withdraw.[3]  We affirm and grant counsel's motion to withdraw.

In support of his motion to withdraw, counsel certifies he has conducted a conscientious examination of the record, and in his opinion, it reflects no potentially plausible basis for reversal of Appellant's convictions.  *Anders v. California*, 386 U.S. 738, 744-45, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967); *In re Schulman*, 252 S.W.3d 403, 406 (Tex. Crim. App. 2008).  Counsel candidly discusses why, under the controlling authorities, the record supports that conclusion.  *See High v. State*, 573 S.W.2d 807, 813 (Tex. Crim. App. 1978).  Counsel has demonstrated that he has complied with the requirements of *Anders* and *In re Schulman* by (1) providing a copy of the brief to Appellant, (2) notifying him of the right to file a *pro se* response if he desired to do so, and (3) informing him of the right to file a *pro se* petition for discretionary review.  *See Kelly v. State*, 436 S.W.3d 313, 319-20 (Tex. Crim. App. 2014) (specifying appointed counsel's obligations on the filing of a motion to withdraw supported by an *Anders* brief).  *See also*

---

[1] TEX. PENAL CODE ANN. § 29.03(a) (West 2011).  Aggravated robbery is a first degree felony.  *Id.* at (b).  The enhancement elevated punishment under Texas Penal Code section 12.42(c)(1) to confinement for life or for any term of not more than ninety-nine years or less than fifteen years and a possible fine not to exceed $10,000.

[2] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

[3] Originally appealed to the Tenth Court of Appeals, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts.  TEX. GOV'T CODE ANN. § 73.001 (West 2013).  Should a conflict exist between precedent of the Tenth Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court.  TEX. R. APP. P. 41.3.

*In re Schulman*, 252 S.W.3d at 408.[4]  By letter, this court granted Appellant an opportunity to exercise his right to file a response to counsel's brief, should he be so inclined.  *Id.* at 409 n.23.  Appellant did not file a *pro se* response.  Neither did the State favor us with a brief.

BACKGROUND

Appellant was accused of committing two separate robberies within minutes of each other and in close proximity to each other just after midnight on June 26, 2014.  The first victim, Adam Lopez, was outside his home on his cell phone when a vehicle occupied by two black men stopped to ask him for directions.[5]  One of the men held a gun on Lopez during the robbery.  After the suspects fled, Lopez called 911 and reported that the suspects left in a maroon vehicle.  He was also able to give a partial license plate.

While officers were on the lookout for the maroon vehicle, a second 911 call was made by San Juanita Sanchez.  She reported that a man tried to rob her at gunpoint while she was checking her mailbox at a mailbox cluster near her home.  He too left in a maroon vehicle.

Police officers, responding to the first robbery call, spotted and began pursuit of a maroon vehicle.  One of the officers saw items being thrown from the vehicle.  When the

---

[4] Notwithstanding that Appellant was informed of his right to file a *pro se* petition for discretionary review upon execution of the *Trial Court's Certification of Defendant's Right of Appeal*, counsel must comply with Rule 48.4 of the Texas Rules of Appellate Procedure which provides that counsel shall within five days after this opinion is handed down, send Appellant a copy of the opinion and judgment together with notification of his right to file a *pro se* petition for discretionary review.  *In re Schulman*, 252 S.W.3d at 408 n.22, 411 n.35.  The duty to send the client a copy of this court's decision is an informational one, not a representational one.  It is ministerial in nature, does not involve legal advice, and exists after the court of appeals has granted counsel's motion to withdraw.  *Id.* at 411 n.33.

[5] At trial, there was unobjected-to-testimony from an officer that the two men did not want directions but had instead stopped to purchase drugs.

3

vehicle being pursued refused to stop, the officers were prompted to request that tire spikes be placed on the road ahead to forcibly stop it. The vehicle being pursued then ran over the spikes, causing it to slow down and eventually stop. Both occupants of the vehicle exited on the passenger side and fled on foot. Appellant was eventually found in a field with the use of a DPS helicopter and a heat-seeking video camera. During the investigation, some of the items recovered were identified as items stolen from Lopez. Appellant was subsequently charged with two counts of aggravated robbery.

THE TRIAL

At trial, after being properly admonished, Appellant exercised his right of self-representation. He signed a waiver of appointed counsel and the trial court found, among other findings, that Appellant had no right to standby counsel. Several times during trial, the trial court expressed concern that Appellant did not know what he was doing and asked him to seek help from an attorney. Appellant consistently responded that he did not need an attorney and knew what he was doing. He never vacillated from exercising his right of self-representation.

Appellant's defensive theory was that the victims wrongly identified him as the robber and also incorrectly identified his vehicle because the partial license plate reported by Lopez did not match his. His inartful line of questioning throughout the trial challenged the witnesses' descriptions of the suspects and the vehicle they were driving.

Adam Lopez was uncooperative with the prosecution. He signed a non-prosecution affidavit and testified at trial as a witness during Appellant's case-in-chief.[6]

_____

[6] Lopez was in prison at the time of trial and was bench-warranted to testify.

His testimony was that he did not remember who robbed him and he could not remember calling 911. He did admit that the 911 call which was played for the jury sounded like him. The contents of the call, as testified to by the 911 operator, established that Lopez was robbed with a gun.

A friend of Lopez's who was with him at the time of the robbery testified for the State. He confirmed that one of the suspects used a gun during the robbery. He claimed two men had stopped at Lopez's house and asked where to buy "weed." His statement to police was that he saw a dark green "Oldsmobile-type" vehicle. When cross-examined by Appellant, the witness could not confirm that the suspect looked like Appellant because it was dark and he could not say "100 percent it was [Appellant]."

The officer who responded to Lopez's 911 call and who took his statement testified at trial. According to Lopez's statement, two black males exited a maroon Nissan Altima or Maxima. One of the suspects held a black handgun and ordered Lopez to lie on his stomach while he was robbed. As the suspects fled the scene, Lopez noted part of the license plate and reported it to the officer.[7] The officer also testified that some of the items found in the vicinity of Appellant's capture and in his vehicle matched items that Lopez had reported stolen.

During cross-examination by Appellant, the officer testified from a police report that Lopez described one of the suspects as having neck tattoos and gold teeth.[8] He further

---

[7] During trial, Appellant insisted that his vehicle was not involved in the robberies because Lopez correctly identified only two letters from his license plate.

[8] Later in the trial, another officer testified that the only suspect he encountered with neck tattoos and gold teeth was Appellant.

testified that Lopez had described the weapon used in the robbery as a "regular-size black Glock" similar to his service weapon. Appellant questioned the officer about discrepancies between the details in the police report and certain photographs but the officer explained that he could not speak to the photographs because he did not take them and did not know when they were taken.

Sanchez then testified that two black men in a maroon vehicle pulled up near her car while she was checking her mailbox. The passenger, donning a red bandanna on his face,[9] exited the vehicle and approached her. As she tried to get back into her car, he pushed her in and demanded her purse while pointing a gun at her. She struggled to push the gun away and felt that it was a real, metal gun. When she told the suspect that she did not have her purse with her, he returned to the vehicle and the two men drove away without taking anything from her. When questioned if she feared for her life, she answered, "Yes."

Sanchez got in her car and called 911. While on the phone, she followed the suspects to see where they were headed. She immediately saw a police vehicle pursuing the suspects since police had flooded the area in response to Lopez's 911 call.

During closing arguments, Appellant denied committing the robberies but admitted he was guilty of evading arrest because he had drugs on him. He claimed that he just happened to be in the area where police were searching when the robberies were

_____

[9] The bandanna introduced into evidence was red and pink but could have been mistaken for red in the dark.

6

reported. He also emphasized the inconsistent descriptions of the vehicles and challenged the relevance of the partial license plate provided by Lopez.

During deliberations, the jury requested a portion of one of the officer's testimony regarding a description of items stolen from Lopez. After having the testimony provided, the jury resumed its deliberations and returned guilty verdicts on both counts of aggravated robbery.

During the punishment phase, Appellant entered a plea of true to the enhancement paragraph. The State introduced a pen packet with Appellant's prior convictions and argued for a minimum sentence of fifty years based upon Appellant's propensity for violence. Appellant denied he was a violent person, attributed his criminal history to drugs, and claimed that he merely made a mistake. The trial court sentenced Appellant to sixty years confinement.

ANDERS APPEAL

By the *Anders* brief, counsel evaluates four potential issues, to-wit: (1) sufficiency of the evidence to support a conviction for aggravated robbery of Adam Lopez; (2) sufficiency of the evidence to support a conviction for aggravated robbery of San Juanita Sanchez; (3) trial court error in allowing Appellant to represent himself; and (4) denial of due process because standby counsel did not assist Appellant with procedural rules. After applying the applicable standards of review, counsel concludes the issues have no merit.

7

As is relevant to the indictment in this case, robbery occurs when a person, in the course of committing theft and with the intent to obtain or maintain control over property intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *See* § 29.02(a)(2); *Kirven v. State*, 293 S.W.3d 233, 236 (Tex. App.—Waco 2009, no pet.). A person commits aggravated robbery if he uses or exhibits a deadly weapon in the course of committing robbery. *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011). Proof of the use or exhibition of a deadly weapon is an essential element of aggravated robbery under section 29.03(a)(2). *Gomez v. State*, 685 S.W.3d 333, 336 (Tex. Crim. App. 1985).

The fact that nothing is stolen from a victim does not render the evidence insufficient to prove robbery. *See White v. State*, 671 S.W.2d 40, 41 (Tex. Crim. App. 1984). The gravamen of the offense is attempting a theft with the intent to obtain or maintain control over the property. Completion of the theft is not a prerequisite to commission of robbery. *Id.*

A "deadly weapon" means a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything that in the manner of its use is capable of causing death or serious bodily injury. § 1.07(a)(17)(A), (B). A firearm is a deadly weapon *per se*. *See Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005). A deadly-weapon finding is appropriate when a firearm is used or exhibited in the commission of a felony. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.054(d) (West Supp. 2017). It is not necessary that the State produce the firearm in

order to prove one was used in a robbery.  *See Victor v. State*, 874 S.W.2d 748, 751 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

The only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  *See Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).  A defendant's identity and criminal culpability may be proven by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge.  *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).  In our review, we must evaluate all of the evidence in the record, both direct and circumstantial and whether properly or improperly admitted.  *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  When the record supports conflicting inferences, we presume the fact finder resolved the conflicts in favor of the prosecution and defer to that determination.  *Jackson*, 443 U.S. at 326.

RIGHT OF SELF-REPRESENTATION

The right of self-representation is personal and must be honored.  *Faretta v. California*, 422 U.S. 806, 834, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).  An accused has a Sixth Amendment right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by

rules of procedure and courtroom protocol. *Id.* at 835. *Faretta* does not, however, require a trial judge to permit "hybrid" representation during trial. *McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984).

Article 1.051(f) of the Texas Code of Criminal Procedure allows a defendant to waive the right to counsel and represent himself. TEX. CODE CRIM. PROC. ANN. art. 1.051(f) (West Supp. 2017). Paragraph (g) of the statute provides that a trial court advise a defendant who wishes to represent himself of the "dangers and disadvantages" of doing so. If the court determines that the waiver of counsel is voluntarily and intelligently made, the defendant shall be provided with a form acknowledging the trial court's admonishments. The record must also show that the defendant understood the consequences of the waiver. *Goffney v. State*, 812 S.W.2d 351, 352 (Tex. App.—Waco 1991), *aff'd*, 843 S.W.2d 583 (Tex. Crim. App. 1992). Deprivation of the right to self-representation is structural error that is not amenable to harmless error analysis. *McKaskle*, 465 U.S. at 177 n.8.

We have independently examined the entire record to determine whether there are any non-frivolous issues which might support the appeal. *See Penson v. Ohio*, 488 U.S. 75, 80, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988); *In re Schulman*, 252 S.W.3d at 409; *Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). We have found no such issues. *See Gainous v. State*, 436 S.W.2d 137, 138 (Tex. Crim. App. 1969). After reviewing the record and counsel's brief, we agree with counsel that there is no plausible basis for reversal of Appellant's convictions. *See Bledsoe v. State*, 178 S.W.3d 824, 826-27 (Tex. Crim. App. 2005).

CONCLUSION

The trial court's judgments are affirmed and counsel's motion to withdraw is granted.


Patrick A. Pirtle
Justice


Do not publish.