

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. PD-0702-13

### SYLVESTER KELLY, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE SIXTH COURT OF APPEALS GREGG COUNTY

PRICE, J., delivered the opinion of the court in which MEYERS, WOMACK, JOHNSON, KEASLER, HERVEY and COCHRAN, JJ., joined. KELLER, P.J., filed a concurring opinion. ALCALA, J., filed a concurring opinion.

### O P I N I O N

When appointed appellate counsel files a so-called *Anders* brief,[1] the indigent appellant has a right to review the appellate record and file a response in the court of appeals, pointing out to the appellate court any reason why he thinks there are non-frivolous issues

---

[1] *Anders v. California*, 386 U.S. 738 (1967).

to be raised on his behalf, notwithstanding his appointed counsel's evaluation of the record. In this petition for discretionary review, we address the question of who should bear the ultimate responsibility for assuring that the indigent appellant is allowed access to the appellate record in order to implement this right. We hold that appointed counsel has a duty, once he has filed a motion to withdraw from representation with accompanying *Anders* brief, to assist the appellant in filing a motion in the court of appeals for access to the appellate record if that is indeed what the appellant wants. Once such a motion is filed, the court of appeals has the ultimate responsibility to make sure that, one way or another (we shall not dictate how), the appellant is granted access to the appellate record so that he may file his response (if, after reviewing the record, he does decide to file one) before it rules on the adequacy of the *Anders* brief and appointed counsel's motion to withdraw.

## FACTS AND PROCEDURAL POSTURE

A jury convicted the appellant of aggravated robbery, and the trial court sentenced him to fifty years' incarceration. Because he was indigent, the trial court appointed a lawyer to represent him on appeal. The appellant's appointed counsel on appeal was unable to find any meritorious points of error to raise, however, and filed a motion to withdraw with an *Anders* brief. He wrote a letter to the appellant to inform him, *inter alia*, of his right to file a *pro se* response to the *Anders* brief. Trial counsel also specifically informed the appellant that he was entitled to review the appellate record in preparing that response, advising him to request

the trial court to provide him with a copy of the trial record.[2] The appellant instead filed a *pro se* motion in the court of appeals requesting access to the appellate record.[3] When the appellant neither filed a response to the *Anders* brief nor sought an extension of time to do so, the Sixth Court of Appeals issued an unpublished memorandum opinion that determined the appeal to be "wholly frivolous."[4] It therefore granted appointed counsel's motion to withdraw from the appeal and affirmed the appellant's conviction, making no mention of any motion for access to the appellate record.[5] The appellant apparently filed a motion for rehearing in which he once again complained that he had been deprived of access to the appellate record in order to prepare a response; the court of appeals appears to have denied

---

[2]

In his letter to the appellant, appointed appellate counsel informed him:

> I do hereby inform you that you have a right to review the record and file a Pro Se Appellate Brief should you desire to do so. You have the right to request the trial Court to provide a copy of the record at no expense to you and the Appellate Court may grant a timely request for extensions of time for filing the Pro Se brief.

The record does not reveal whether the appellant made a request to the trial court for access to the appellate record.

[3]

In his petition for discretionary review, the appellant complains that the court of appeals denied his motion for access to the appellate record. We find no such written order in the appellate record explicitly denying the appellant's motion. But neither does the record indicate that the court of appeals took any step to assure the appellant's access to the appellate record before granting appellate counsel's motion to withdraw.

[4]

*Kelly v. State*, No. 06-12-00141-CR, 2013 WL 1804115, at *1 (Tex. App.—Texarkana Apr. 26, 2013) (mem. op., not designated for publication).

[5]

*Id.*

this motion.[6]

The appellant duly filed a petition for discretionary review in this Court, arguing that the court of appeals violated his rights to due process and due course of law by deeming his appeal to be frivolous without first granting him access to the appellate record so that he could prepare an adequate response to his appointed counsel's *Anders* brief. We granted the appellant's petition and ordered the trial court to appoint counsel for the appellant to brief the issue. In their respective briefs, both the State and the appellant have now agreed that the appellant should have been allowed access to the appellate record in order to prepare his response to appointed counsel's *Anders* brief.[7] In the absence of any governing rule in the

---

[6] The court of appeals issued its opinion in this cause on April 26, 2013. The record before us contains a file-stamped copy of the appellant's *pro se* motion for rehearing, dated May 5, 2013, in which he renews his complaint that he was "not provided access to the clerk[']s record or the reporter[']s record[.]" Although it does not otherwise appear in the record, the appellant has attached to his petition for discretionary review a copy of a letter, addressed to the appellant, dated May 7, 2013, and appearing on the court of appeals's letterhead, announcing that on that date the court of appeals overruled the appellant's motion for rehearing.

[7] This Court has never expressly held that access to the record is constitutionally required. But in *Gainous v. State*, 436 S.W.2d 137, 138 (Tex. Crim. App. 1969), we noted that "the careful trial judge made available" the appellate record. Likewise, in *Price v. State*, 449 S.W.2d 73, 74 (Tex. Crim. App. 1969), we observed that "the record was made available" to the indigent appellant. Following this example, in *Brown v. State*, 485 S.W.2d 914, 915 (Tex. Crim. App. 1972), we ordered the trial court to "make the record . . . available to appellant so that he might file a pro se brief if he so desires." Thereafter, this Court began to routinely abate appeals in cases in which it appeared that the appellant had been deprived of the opportunity to review the appellate record. *E.g.*, *McMahon v. State*, 529 S.W.2d 771, 772 (Tex. Crim. App. 1975); *Heiskell v. State*, 522 S.W.2d 477, 477 (Tex. Crim. App. 1975); *Hawkins v. State*, 515 S.W.2d 275, 276 (Tex. Crim. App. 1974); *see also Caraway v. State*, 560 S.W.2d 690, 691 (Tex. Crim. App. 1978) ("[T]he defendant must be advised that he has a right to file a pro se brief and that he has a right to personally review the appellate record for that purpose."). Every court of appeals to address the question has held that the

Texas Rules of Appellate Procedure, however, or any case law providing a uniform procedure for ensuring that a *pro se* appellant who so desires may gain access to the appellate record under these circumstances,[8] the State could only suggest that "[t]his Court . . . assign someone the responsibility of arranging access."[9]  Indeed, we ourselves have previously acknowledged "that there is a need for uniform procedures for those cases in which an *Anders* brief is filed, especially as the Texas Rules of Appellate Procedure do not provide any

---

appellate record must be made available under these circumstances. *E.g.*, *Eaden v. State*, 161 S.W.3d 173, 175 (Tex. App.—Eastland 2005, no pet.) (upon filing an *Anders* brief, appellate counsel must inform his client, *inter alia*, "of his right to review the record and to file a pro se brief"); *Johnson v. State*, 885 S.W.2d 641, 647 (Tex. App.—Waco 1994, pet. ref'd) ("[T]he record must show the defendant was given access to the [appellate] record before the attorney has fully complied with the requirements of *Anders*."); *Russell v. State*, 735 S.W.2d 254, 255 (Tex. App.—Dallas 1987, no pet.) (indigent appellant is not entitled to his own personal copy of the appellate record, but trial judge has a duty to "make the record *available* to the defendant"); *see also Ex parte Owens*, 206 S.W.3d 670, 674 n.28 (Tex. Crim. App. 2006) (noting *Johnson*'s requirement that, when an appellate counsel files an *Anders* brief, he must inform his client of his right to access the appellate record).

[8]     *See, e.g.*, *Escobar v. State*, 134 S.W.3d 338, 339 (Tex. App.—Amarillo 2003) ("[W]e have found no decision addressing on whom the responsibility falls of ensuring that an indigent appellant obtains access to the record for review for possible preparation of a *pro se* response in an *Anders* appeal."). Some courts of appeals have placed the onus on appointed trial counsel to at least inform the appellant of the proper procedure for securing access to the appellate record. *E.g.*, *Johnson*, 885 S.W.2d at 647 n.2; *Bruns v. State*, 924 S.W.2d 176, 177 n.1 (Tex. App.—San Antonio 1996, no pet.); *Evans v. State*, 933 S.W.2d 334, 335 n.1 (Tex. App.—Waco 1996, no pet.). The Amarillo court of appeals has gone so far as to "hold that appointed counsel has the responsibility to procure a copy of the record for appellant to review in preparation of his *pro se* response to the *Anders* brief." *Escobar*, 134 S.W.3d at 339; *see also Thomas v. State*, No. 03-11-00294-CR, 2012 WL 935285, at *1 (Tex. App.—Austin Mar. 15, 2012) (not designated for publication) ("In an abundance of caution, we request a written response from appointed counsel verifying that his client has in fact received a copy of the appellate record.").

[9]     State's Brief at 16.

explicit guidance."[10]

In order to educate ourselves about whatever procedures may presently be in place, we solicited information from the various courts of appeals with respect to how they currently go about ensuring that appellate records are made available to indigent *pro se* appellants who wish to review them in order to respond to *Anders* briefs. More specifically, we invited the clerks of the fourteen courts of appeals in Texas to file amicus briefs or letters "informing us of the current policies and procedures in their respective districts for ensuring that *pro se* appellants who so desire are granted access to the appellate record for purposes of responding to *Anders* briefs."[11] After considering the various responses of amici, we now endeavor to more specifically assign responsibility for giving the appellant access to the appellate record in a timely and efficient manner without unduly encroaching on the discretion of the courts of appeals to handle each case as the circumstances prescribe.

## ANALYSIS

In response to our invitation to submit amicus briefs/letters, the Clerk of the Sixth Court of Appeals has indicated that "[o]ur procedures vary according to the situation." Upon receiving an *Anders* brief, the Sixth Court first makes sure that appellate counsel has

[10] *In re Schulman*, 252 S.W.3d 403, 410 (Tex. Crim. App. 2008).

[11] *Kelly v. State*, No. PD-0702-13, slip op. at 4-5 (Tex. Crim. App. Dec. 20, 2013) (not designated for publication).

informed the appellant of, *inter alia*, his right to review the appellate record. The more "helpful" appellate attorneys send a copy of the record to the appellant, we are told, but "[i]n the absence of such a proactive behavior, if the appellant contacts this Court requesting a record, we typically refer him or her alternatively to the defense attorney or the trial clerk." Thus, the Sixth Court has adopted a policy that appellate counsel "has the responsibility to procure a copy of the record for appellant to review in preparation of the pro se response to the *Anders* brief."[12] We cannot tell from the record before us in this case whether the Sixth Court, in keeping with this policy, referred the appellant to his appellate counsel or the trial clerk. We agree with the Sixth Court that appellate counsel has a continuing responsibility to his client, extending beyond the filing of a motion to withdraw and *Anders* brief, to facilitate the appellant's access to the appellate record should the appellant so desire. But we believe that the courts of appeals also have an on-going responsibility, once an appellant manifests his desire for *pro se* record access, to officially guide the process and follow through to make sure that such access is granted before they rule on the validity of appointed counsel's *Anders* brief and motion to withdraw.

### Appointed Counsel's Responsibility

Once appellate counsel is appointed to represent an indigent client, his only

---

[12] "Under rules 34.5(g) and 34.6(h) of the Texas Rules of Appellate Procedure," the Sixth Court Clerk asserts, "we expect appointed counsel to promptly request permission from the trial court to obtain the duplicate clerk's and reporter's records filed with the trial court clerk for use by appellant in preparation of the response. *See Escobar v. State*, 134 S.W.3d [at 339]."

justification for filing an *Anders* brief is his ethical obligation to avoid burdening the courts with wholly frivolous appeals.[13] When his good-faith review of the law and record suggests to him no plausible grounds for appeal, appointed counsel's "duty to withdraw is based upon his professional and ethical responsibilities as an officer of the court not to burden the judicial system with false claims, frivolous pleadings, or burdensome time demands."[14] The purpose of the *Anders* brief is to satisfy the appellate court that the appointed counsel's motion to withdraw is, indeed, based upon a conscientious and thorough review of the law and facts; "the *Anders* brief is only the proverbial 'tail' [while] the motion to withdraw is 'the dog.'"[15] That being the case, the court of appeals may not immediately grant the motion to withdraw, even though the granting of a motion to withdraw is inevitable once an *Anders* brief has been filed.[16] Instead, the appellate court must wait "until such time as [it] has made

---

[13]

 *Owens*, 206 S.W.3d at 677 & n.2 (Womack, J., concurring) (citing TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.01).

[14]

 *Shulman*, 252 S.W.3d at 407.

[15]

 *Id*. at 408.

[16]

 Once an *Anders* brief is filed in Texas, there are two possible outcomes, both of which involve eventually granting original appointed counsel's motion to withdraw. Either the appellate court confirms that there are no non-frivolous grounds for appeal, thus extinguishing the appellant's constitutional right to appellate counsel, and grants the motion to withdraw, or the appellate court finds that there are plausible grounds for appeal, in which case the appellate court *still* grants the motion to withdraw, but remands the cause to the trial court for appointment of new appellate counsel. *Meza v. State*, 206 S.W.3d 684, 689 (Tex. Crim. App. 2006).

a determination whether appointed counsel has exercised sufficient diligence in assaying the record for error, and that there are, in fact, no arguable issues in the case."[17]  "Counsel's duties to his client are not extinguished until that time."[18]  Appointed counsel's duties of representation, therefore, do not cease simply because he has submitted a motion to withdraw, along with supporting *Anders* brief, in the court of appeals.  Until such time as the court of appeals relieves him of this professional obligation, appellate counsel must continue to "act with competence, commitment and dedication to the interest of the client and with zeal in advocacy upon the client's behalf."[19]

We have previously acknowledged that an appointed lawyer who files an *Anders* brief must fulfill a number of additional functions.  He must write a letter to (1) notify his client of the motion to withdraw and the accompanying *Anders* brief, providing him a copy of each, (2) inform him of his right to file a *pro se* response and of his right to review the record preparatory to filing that response, and (3) inform him of his *pro se* right to seek

---

[17]

*Id*. at 687.  *See Penson v. Ohio*, 488 U.S. 75, 82-83 (1988) ("[T]he Court of Appeals should not have acted on the motion to withdraw before it made its own examination of the record to determine whether counsel's evaluation of the case was sound.").

[18]

*Shulman*, 252 S.W.3d at 411.  *See* TEX. CODE CRIM. PROC. art. 26.04(j)(2) ("An attorney appointed under this article shall . . . represent the defendant until . . . appeals are exhausted, or the attorney is permitted or ordered by the court to withdraw as counsel for the defendant after a finding of good cause is entered on the record[.]").

[19]

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.01 cmt. 6.

discretionary review should the court of appeals declare his appeal frivolous.[20]  To this list

we now add that appointed counsel who files a motion to withdraw and *Anders* brief must

also (4) take concrete measures to initiate and facilitate the process of actuating his client's

right to review the appellate record, if that is what his client wishes.  We think that the most

time-efficient method to facilitate this right of review is to require that, at the same time that

he files the motion to withdraw and *Anders* brief and carries out the notification functions

(1) through (3), listed above, appointed counsel must also notify his client that, should he

wish to exercise his right to review the appellate record in preparing to file a response to the

*Anders* brief, he should immediately file a motion for *pro se* access to the appellate record

with the applicable court of appeals.[21]  Appointed counsel should include in his letter to the

---

[20]

       *Owens*, 206 S.W.3d at 674 n.28;  *Meza*, 206 S.W.3d at 689 n.23.

[21]

      In the instant case, appointed appellate counsel advised the appellant to file a motion to obtain access to the appellate record in the trial court.  While the impulse was laudable, we think the more serviceable recommendation would have been to file his motion (as the appellant actually did here) in the court of appeals.  By the time an *Anders* brief in support of a motion to withdraw can be filed, the appellate record must already be on file in the court of appeals.  That being the case, all further proceedings in the trial court are suspended.  *See* TEX. R. APP. P. 25.2(g) ("Once the record has been filed in the appellate court, all further proceedings in the trial court—except as provided otherwise by law or by these rules—will be suspended until the trial court receives the appellate-court mandate.").  Thus, even though the trial-court clerk retains a copy of the appellate record, which may be available "for the parties to use with the court's permission[,]" TEX. R. APP. P. 34.5(g), 34.6(h), the trial court is unlikely to be aware of the progress of the appeal, appointed counsel's motion to withdraw with attendant *Anders* brief, or the fact that the appellant's *pro se* right to review the appellate record has been triggered.  The trial court, perhaps assuming that a *pro se* motion for access to the appellate record is, at best, nothing more than an impermissible attempt at hybrid representation on appeal, may well choose to simply ignore it.

appellant a form motion for this purpose, lacking only the appellant's signature and the date, and inform the appellant that, in order to effectuate his right to review the appellate record *pro se*, should he choose to invoke it, he must sign and date the motion and send it on to the court of appeals within ten days of the date of the letter from appellate counsel. Counsel should make sure to supply the appellant with the mailing address for the relevant court of appeals. At the same time, appointed counsel should notify the court of appeals, in writing, that he has (1) informed the appellant of the motion to withdraw and attendant *Anders* brief, (2) provided the appellant with the requisite copies while notifying him of his various *pro se* rights, and (3) supplied him with a form motion for *pro se* access to the appellate record (and the mailing address for the court of appeals), to be filed within ten days, so that he may timely effectuate that right, if he so chooses.[22] This way, not only can the court of appeals be assured that appointed counsel has fulfilled his obligation to fully inform his indigent client of his status and rights, but it can also be on the alert to receive directly from the appellant a motion for *pro se* access to the appellate record so that it does not inadvertently misconstrue the motion, if and when it arrives, as an impermissible attempt at hybrid

---

[22] Several of the courts of appeals have indicated that it is sometimes the case that, when the appellate record is not voluminous, appellate counsel will *sua sponte* send a copy of the appellate record to the appellant along with the *Anders* brief and motion to withdraw. That would certainly expedite the process, and the court of appeals could then simply issue an order requiring the appellant to file his response to the *Anders* brief by a date certain. But we do not require appellate counsel to do so. If appellate counsel should choose to provide a copy of the record to his client *sua sponte*, he should alert the court of appeals to that fact in his notification to the court of appeals so that the court of appeals will know to proceed directly to issuing its scheduling order.

representation, and therefore disregard it.

### The Appellate Court's Responsibility

Once the appellant has filed his motion to make the appellate record available with the court of appeals, we think that the onus should shift to the court of appeals to ensure that, one way or another, this request is satisfied. Moreover, the appellate court may not rule on the motion to withdraw and the validity of the *Anders* brief until the appellant has been given access to, and an adequate opportunity to review, the appellate record. This, we think, is the optimal way to ensure that the indigent *pro se* appellant's right to review the appellate record in order to respond to appellate counsel's *Anders* briefs is honored.

So how do the various courts of appeals currently go about making arrangements for *pro se* access to the appellate record? Judging by their amicus briefs, the answer is that they do so in various ways, all of which seem to have met with reasonable success. Even within the same court of appeals, the procedure chosen may depend on the circumstances of the individual case. By the time an *Anders* brief can be filed, the clerk of the appellate court possesses the appellate record, but by rule the trial court clerk retains a duplicate that is specifically designated for use by the parties.[23] Zeroing in on this fact, many of the courts of appeals instruct the trial court to have its clerk make the duplicate appellate record

---

[23] At least the duplicate clerk's record is specifically designated to be retained by the trial court clerk "for the parties to use with the court's permission." TEX. R. APP. P. 34.5(g). Although the trial court must also retain a duplicate of the reporter's record, curiously, the rules do not likewise specify that the duplicate reporter's record is for use by the parties. TEX. R. APP. P. 34.6(h).

available to the appellant, which generally requires the trial court clerk to forward a physical copy to the appellant if he is incarcerated.[24]  Others simply send a letter to appellate counsel ordering him to obtain the trial court clerk's duplicate of the record and make that available to the appellant.  Several courts of appeals have indicated that, if the record is relatively small, or if the appellant indicates that he has encountered problems obtaining the duplicate record from the trial court clerk, the clerk of the court of appeals will make a copy of the original appellate record and mail it directly to the appellant.

By all accounts, each of these procedures has worked tolerably well in the past, and we need not mandate or even recommend one over the others.  Our only requirement is that, upon receipt of the appellant's motion for *pro se* access to the appellate record, the court of appeals enter a formal written order specifying the procedure to be followed in the particular case, sending copies of that order to the appellant, his appellate counsel, the State, the trial

---

[24]  The Eighth Court of Appeals has a unique procedure.  After making sure that appellate counsel has notified the appellant of his right to review the appellate record, the Eighth Court waits to act until such time as the appellant may actually request to review the record.  If so, the court of appeals then enters an order directing the clerk of the trial court to forward the *actual* duplicate of the appellate record to the warden of the unit in which the incarcerated appellant is housed, for a specified period of time, with explicit instructions to allow the appellant supervised access to that duplicate record.

Several of the courts of appeals, including the Eighth Court, have expressed concerns about how electronic copies can be made available to *pro se* appellants who are incarcerated.  It occurs to us that, similar to the Eighth Court's procedure with respect to the trial court clerk's duplicate copy, courts of appeals could order either the trial-court clerk or its own clerk to send an electronic copy of the record to the warden of the appellant's unit with explicit instructions to provide the appellant with supervised access to a computer upon which to review it or print it out.

court, and the trial court's clerk, so that all interested parties are on the same page.[25]  The order should also require the entity who is designated to arrange the appellant's access to the record (be that the appellate counsel, the trial court, or the trial court's clerk) to report to the court of appeals, in writing, when the record has been made available to the appellant so that it can then set a firm date for the appellant to file his response to the *Anders* brief, as well as a date for the State's response, if any.  The court of appeals then must continue to monitor the situation and may not, in any event, rule on the validity of appellate counsel's motion to withdraw and *Anders* brief until it has satisfied itself that the appellant has been able to access the appellate record to prepare his response, in keeping with its order.

## CONCLUSION

We hold that the court of appeals in the instant case erred to grant appointed counsel's motion to withdraw and declare the appellant's appeal to be frivolous without first satisfying the appellant's express request to gain access to the appellate record in order to meaningfully respond to the *Anders* brief.  The judgment of the court of appeals is reversed and the cause is remanded to that court.  After arranging for the appellant to have a meaningful opportunity to review the appellate record in accordance with the procedure we announce today, that

---

[25]

About half of the courts of appeals designate appellate counsel as the party responsible for arranging for the appellant to gain access to the trial court clerk's duplicate of the appellate record. Even so, it is important for the court of appeals to enter a formal order to that effect and copy it to all of the above-named parties.  This way, the trial judge and his clerk will be officially alerted to the fact that the appellant's counsel will soon be seeking access to the duplicate record, and the appellant will know that his desire to review the appellate record will soon be honored.

court shall revisit its review of appellate counsel's *Anders* brief and motion to withdraw in

light of the appellant's revised response, if any, and any response from the State.


DELIVERED:      June 25, 2014
PUBLISH