

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

Nos. 07-18-00383-CV
07-18-00384-CV

IN THE INTEREST OF D.F. AND R.F., CHILDREN
IN THE INTEREST OF K.T. AND J.S., JR., CHILDREN

On Appeal from the 320th District Court
Potter County, Texas
Trial Court Nos. 75,465-D and 89,467-D, Honorable Carry Baker, Presiding

February 13, 2019

## MEMORANDUM OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

In these two appeals, appellant N.T. (the mother), challenges final orders terminating her parent-child relationships with D.F. (age eleven), K.T. (age eight), R.F. (age six), and J.S., Jr. (age twenty-three months).[1]  *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2018).  The trial court's final orders named appellee, the Texas Department

---

[1] We identify the mother and the children in this manner to protect the children's privacy.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018); TEX. R. APP. P. 9.8(b).  The parental rights of the two men who are the biological fathers of the children were terminated also.  They have not appealed.

of Family and Protective Services, the children's permanent managing conservator. In both appeals, the mother's court-appointed appellate counsel has filed a motion to withdraw from representation supported by an *Anders* brief. *Anders v. California,* 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967); *In re P.M.,* 520 S.W.3d 24, 27 (Tex. 2016) (per curiam). We will affirm the final orders of the trial court and take no action on counsel's motions to withdraw.

The two cases were filed in December 2016, some two months after the birth of J.S., Jr. They were tried together to the bench. Final hearing evidence indicated the mother had a history with the Department dating to 2003. In the present cases, the Department became involved with the four children when the mother tested positive for methamphetamine at the birth of J.S., Jr. She admitted using methamphetamine during the pregnancy. A drug test of J.S., Jr. was positive for methamphetamine. At the time, the mother had possession of the other three children, and was living with J.S., Sr. He also admitted illegal drug use, and his drug test results also were positive for methamphetamine. When D.F. and R.F. were tested, their results too were positive for methamphetamine.

To avoid immediate removal of the children, the Department transferred the case to its family-based safety services. This allowed the mother and J.S, Sr. to work on services without removal of the children. Under the procedure, the supervising party was the mother's mother, S.T. But the Department removed the children when it determined S.T. "was not supervising," and J.S., Jr. was not receiving care for medical issues, some of which stemmed from his exposure to methamphetamine.

To mitigate the reasons for removal and provide a means for returning the children, the Department prepared a service plan for each of the three parents. The caseworker agreed the mother completed the "majority" of services required by the plan. The mother acknowledged in testimony, however, that she had relapsed into drug use on four previous occasions after completing the same family-based services she completed in this case.

The mother, age thirty-three, admitted in testimony that she had struggled with addiction to methamphetamine; she began using the drug in her early twenties. She further admitted attending Alcoholics Anonymous meetings while at the same time using methamphetamine. The mother's December 2017 drug test was positive for methamphetamine and she failed to attend a January 2018 court-ordered hair strand analysis.

In January 2018, the mother learned she was again pregnant. Results of drug tests conducted after the mother learned of her pregnancy were negative. The caseworker testified this child's father, T.P., had "significant criminal and CPS history." His parental rights to his daughter, the caseworker added, were terminated in 2015. The caseworker further testified the mother told her she was no longer seeing T.P. but that she considered "he has a right to see the baby." After the mother denied two instances of domestic violence allegedly involving T.P., the mother's grandmother, over a hearsay objection, was permitted to testify that the mother told her T.P. hit her in the face.

The court heard evidence supporting the caseworker's opinion the mother had not maintained stable and appropriate housing during the case. She noted the mother

formerly had lived with her grandmother, her mother, and her father. For a time, she occupied her own apartment but was evicted. By the time of final hearing the mother was again living with her father. When the mother was asked by the caseworker what the living arrangement for the four children would be if they were returned to her care she responded, "'they would just figure it out.'" There was evidence the mother's grandmother lived nearby.

There was evidence also the mother remained unemployed for long stretches of time during the case. She testified she was employed for some five months. Her unemployment at the time of final hearing was attributed to the "high risk" nature of her pregnancy.

The caseworker acknowledged the children were bonded with the mother, and their weekly one-hour visits went "very well." The mother acknowledged her multiple relapses after other Department-initiated cases but told the court she was now making decisions for the betterment of her children.

The caseworker testified at the time of final hearing D.F. and R.F. were placed in a children's home and were doing "very well." K.T. also was placed at the children's home while J.S., Jr. was placed in a foster home. The caseworker acknowledged K.T. was the alleged victim of an act of indecency with a child at the placement facility, an allegation that remained under investigation. The caseworker said that if the court terminated the parents' rights the Department would begin actively seeking adoption for the four children.

The children's ad litem recommended termination of the mother's parental rights, though she told the court the children badly want to live with their mom.

The court's final order in both cases terminated the mother's parental rights based on findings she violated predicate grounds alleging endangering conditions, endangering conduct and causing a child to be born addicted to a controlled substance, and that termination was in the best interest of the children. TEX. FAM. CODE ANN. § 161.001(b)(1)(D),(E),(R) & (2) (West Supp. 2018).

Counsel's *Anders* brief presents a professional evaluation of the record supporting his opinion there are no arguable grounds for appeal. *Anders,* 386 U.S. at 744-45. We find counsel's motion to withdraw and brief meet the requirements of *Anders.* Counsel also has demonstrated he provided a copy of his brief and the record to the mother and notified her of her right to file a pro se response if she desired. *Kelly v. State,* 436 S.W.3d 313, 319 (Tex. Crim. App. 2014). By letter from the clerk of this court, we also notified the mother of her opportunity to respond to counsel's brief. She has not filed a response.

When presented with a motion to withdraw supported by an *Anders* brief we are required to independently examine the entire record and decide whether counsel has correctly determined the record does not present an arguable ground for appeal. *Stafford v. State,* 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *In re A.W.T.,* 61 S.W.3d 87, 89 (Tex. App.—Amarillo 2001, no pet.). We have carefully reviewed the record and counsel's *Anders* brief and agree with counsel that the record presents no arguable grounds for appeal. *In re K.R.C.,* 346 S.W.3d 618, 619 (Tex. App.—El Paso 2009, no pet.).

The trial court's final orders terminating the mother's parental rights to D.F., K.T., R.F., and J.S., Jr. are affirmed. We take no action on counsel's motions to withdraw but

call counsel's attention to the continuing duty of representation through the exhaustion of proceedings, which may include the filing of a petition for review. *In re P.M.,* 520 S.W.3d at 27.

James T. Campbell
Justice