**Opinion filed April 30, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00305-CV

_____

## IN THE INTEREST OF P.C., A CHILD

**On Appeal from the 220th District Court**
**Comanche County, Texas**
**Trial Court Cause No. FM22517**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and the father of P.C.  Both parents filed a notice of appeal.  The father later filed an *Anders* brief, and the mother filed a brief on the merits in which she challenges the sufficiency of the evidence as to best interest.  We affirm.

### *Father's Appeal*

The father's court-appointed counsel has filed a brief in which he professionally and conscientiously examines the record and applicable law and concludes that the appeal presents no issues of arguable merit.  The brief meets the requirements of *Anders v. California*, 386 U.S. 738 (1967), by presenting a

professional evaluation of the record demonstrating why there are no arguable grounds to be advanced. *See In re Schulman*, 252 S.W.3d 403, 406–08 (Tex. Crim. App. 2008); *High v. State*, 573 S.W.2d 807, 812 (Tex. Crim. App. [Panel Op.] 1978); *see also In re P.M.*, 520 S.W.3d 24, 27–28 (Tex. 2016).

The father's counsel provided him with a copy of the brief. In compliance with *Kelly v. State*, 436 S.W.3d 313, 318–20 (Tex. Crim. App. 2014), counsel provided the father with a copy of the appellate record. This court provided the father with an opportunity to file a pro se response to counsel's brief. The father did not file a response. We conclude that the father's counsel has satisfied his duties under *Anders*, *Schulman*, and *Kelly*. Following the procedures outlined in *Anders* and *Schulman*, we have independently reviewed the record in this cause, and we agree that the father's appeal is frivolous.

## *Mother's Appeal*

In one issue on appeal, the mother challenges the sufficiency of the evidence to support the trial court's findings in support of the termination of her parental rights. Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in

Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. FAM. § 161.001(b).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that the mother had committed five of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), (N), (O), and (P). Specifically, the trial court found that the mother had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being; that the mother had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being; that the mother had constructively abandoned the child; that the mother had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child, who had been in the managing conservatorship of the Department

3

of Family and Protective Services for not less than nine months as a result of the child's removal from the parents for abuse or neglect; and that the mother had used a controlled substance in a manner that endangered her child and had either (1) failed to complete a court-ordered substance abuse treatment program or (2) continued to abuse a controlled substance after completing a court-ordered substance abuse treatment program. The trial court also found, pursuant to Section 161.001(b)(2), that termination of the mother's parental rights would be in the best interest of the child.

In her sole issue, the mother challenges the factual sufficiency of the evidence with respect to the trial court's finding that termination of her parental rights was in the child's best interest. The record reflects that the Department became involved with P.C.'s family in November 2017 due to the parents' use of methamphetamine while P.C. was in their care and to the parents' neglect of P.C. The Department was "called due to [P.C.] having a severe, severe diaper rash." The parents had medication for P.C.'s diaper rash, but it appeared that the medication was not being used. P.C. "had like second degree burns from her diaper rash"; the rash was cracking and bleeding and was "pretty horrific." The burned area extended from the top of P.C.'s vagina all the way to her anus and down her legs approximately two inches. P.C.'s physical condition was poor; she was very thin and malnourished. She also had RSV, a coinciding bacterial infection, and a yeast infection. Additionally, the parents brought moldy bottles for P.C. when they took her to Head Start.

In November 2017, during the Department's investigation into the allegations in this case, the mother tested positive for methamphetamine. While this case was pending, the mother tested positive for methamphetamine three times (February, April, and May), did not test for three months while she was homeless, and then tested negative three times during the two months preceding trial (September and

4

October). The record indicates that a family service plan was prepared and made an order of the trial court. The mother admitted that she had failed to comply with most of the provisions of her service plan. While this case was pending in the trial court, the mother failed to maintain appropriate and stable housing. She also missed most of her scheduled visits with P.C., attending about eight of the fifty scheduled visits. The mother even failed to complete the parenting packet. Although she had had eleven months to comply with her service plan, the mother asked for more time to work on her service plan and "fix" things.

The Department's goal for P.C. was termination of the parents' rights and adoption by the foster parents. The conservatorship caseworker for the Department believed that it was in P.C.'s best interest to finalize the case on the day of trial so that the foster parents could move forward with an adoption. The foster parents intended to adopt P.C. The record reflects that the foster parents tended to P.C.'s medical needs and that P.C. was doing really well, emotionally and physically, in their care. The child's attorney ad litem/guardian ad litem pointed out that the parents had spent over half of P.C.'s life doing drugs and not attempting to do what they needed to do to regain custody of P.C. The ad litem indicated that P.C. was in a very good place in a "forever home that's going to take care of her and has been taking care of her."

Based upon the *Holley* factors and the evidence in the record, as set forth above, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence. *See Holley*, 544 S.W.2d at 371–72. Considering the emotional and physical needs of the child, the mother's use of methamphetamine prior to and after removal, P.C.'s physical condition at the time of removal, the mother's unstable housing and employment, the apparent stability of the foster parents' home, and the Department's plans for P.C., the trial court could reasonably have formed a firm belief or conviction that it would be in P.C.'s best interest for the

5

mother's parental rights to be terminated. Thus, we hold that the evidence is factually sufficient to support the trial court's best interest finding. The mother's sole issue on appeal is overruled.

*This Court's Ruling*

We affirm the trial court's order of termination.


JIM R. WRIGHT

SENIOR CHIEF JUSTICE


April 30, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.