

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00194-CV

_____

IN THE INTEREST OF B.D., J.D., AND B.D., CHILDREN

On Appeal from the 233rd District Court
Tarrant County, Texas
Trial Court No. 233-538935--13

Before Sudderth, C.J.; Wallach and Walker, JJ.

Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

B.D. (Mother) appeals the termination of her parental rights to her three sons.[1] After reviewing the *Anders* brief filed by Mother's appointed appellate counsel and conducting an independent review of the record, we will affirm.

## I. Background

In March 2019, Mother's two-year-old daughter died from physical abuse while in the custody of Mother's friend. The Texas Department of Family and Protective Services (DFPS) intervened; it offered Mother assistance to help her cope with her daughter's death, and it provided services to help Mother understand and fulfill her responsibilities to care for the three remaining children in her custody—B.J.L.D., J.D.D., and B.L.D. (Children).[2] But Mother did not complete any of the provided services: she regularly missed counseling sessions, she failed to maintain stable housing, and she failed to proactively seek out the resources necessary to meet her Children's needs.[3]

---

[1]Because Mother shares initials with two of her three sons, we include the middle initials when identifying the sons, or refer to the sons collectively as Children.

[2]DFPS referred Mother's case to a contractor, Family-Based Safety Services, for the relevant services.

[3]In March 2019, the Children ranged in age from one year old to eight years old.

But after Mother purportedly left the Children at home alone with strangers in March 2020, DFPS petitioned to terminate Mother's parental rights.[4] The trial court entered an order naming DFPS as the Children's temporary sole managing conservator pending trial. Soon thereafter, DFPS established a service plan outlining the steps necessary for Mother to obtain the return of the Children, and the trial court ordered Mother to comply with the plan. Mother received and agreed to the service plan.

But Mother did not comply with the service plan. Following the Children's removal, Mother missed approximately two-thirds of her scheduled visits with her Children, she failed to secure stable housing or stable employment, she delayed and then neglected her mental health treatment, and she repeatedly refused additional drug tests after testing positive for methamphetamine, cocaine, and marijuana.

After more than a year of noncompliance with the service plan, in June 2021,[5] the trial court held a bench trial on DFPS's petition to terminate.[6] The court found

---

[4]In the same petition, DFPS sought to terminate the parental rights of the Children's respective fathers. Although the trial court ultimately terminated the fathers' rights when it terminated Mother's rights, the fathers did not appeal.

[5]Generally, a trial court loses jurisdiction over a parental termination case if it does not commence a trial on the merits before "the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator." Tex. Fam. Code Ann. § 263.401(a). But the trial court may authorize an extension of up to 180 days if "the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the

3

that Mother had "constructively abandoned the [C]hildren" and had "failed to comply with the provisions of a court order that specifically established the actions necessary for the [M]other to obtain the return of the [C]hildren." *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N), (b)(1)(O). After also finding that termination was in the Children's best interest, the trial court terminated Mother's parental rights. *See id.* § 161.001(b)(2).

## II. Discussion

Mother's appointed appellate counsel (Counsel) filed an *Anders* brief indicating that Mother's appeal is frivolous; Counsel stated that he had conducted a thorough review of the record but did not identify any arguable grounds for reversal. *See Anders v. California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 1400 (1967); *see also In re K.M.*, 98

---

child." *Id.* § 263.401(b). Here, the trial court appointed DFPS as the temporary managing conservator on March 11, 2020, and before the first anniversary of this order, the trial court made the necessary findings and authorized an extension of less than 180 days, until September 9, 2021. In June 2021, several months before the trial court's jurisdiction was set to expire, the court held a trial on the merits and entered its final termination order.

[6]At trial, Mother's counsel requested a continuance because DFPS allegedly sent Mother's trial notice to an outdated mailing address. Mother's counsel did not identify the mailing address DFPS should have used, stating only that counsel "believe[d]" Mother had been "residing in a hotel in Euless and in Plano" when DFPS sent the notice. Regardless, Mother's trial counsel acknowledged that she represented Mother, that she (counsel) had received notice from DFPS in a timely manner, and that she gave Mother actual notice of the trial. The trial court also took judicial notice of Mother's notarized waiver of service of citation, which was on file with the court. The waiver included Mother's acknowledgments that she had received a copy of DFPS's petition and that she was responsible for notifying DFPS and the trial court if she changed her address.

4

S.W.3d 774, 776–77 (Tex. App.—Fort Worth, order) (holding *Anders* procedures apply to parental termination appeals), *disp. on merits*, 2003 WL 2006583, at *1–3 (Tex. App.—Fort Worth May 1, 2003, no pet.) (per curiam) (mem. op.). Counsel informed Mother of her right to request the record and her right to file a pro se response to the *Anders* brief.[7] *See Anders*, 386 U.S. at 744, 87 S. Ct. at 1400; *In re G.C.*, No. 02-20-00368-CV, 2021 WL 1823341, at *1 (Tex. App.—Fort Worth May 7, 2021, pet. denied) (mem. op.). This court similarly informed Mother of these rights on multiple occasions.[8] But Mother never sought access to the appellate record nor did she file a response.[9]

---

[7]Counsel also provided Mother with a motion for pro se access to the appellate record, notified her of the deadline for filing the motion, and informed her of this court's mailing address. *Cf. Kelly v. State*, 436 S.W.3d 313, 319–20 (Tex. Crim. App. 2014).

[8]When Counsel filed his *Anders* brief, he also certified that he had provided Mother a copy of the brief, and he indicated Mother's then-current mailing address. Three days later, we used that address to mail Mother a letter separately notifying her of the *Anders* brief, advising her of her right to respond, and asking her to contact the court regarding her intent to do so. The letter was "return[ed] to sender" and marked "attempted—not known[;] unable to forward." [Capitalization altered.] We then contacted Counsel to obtain Mother's updated contact information, and using this updated information, we sent Mother two additional notices—one via mail and another via e-mail. As before, our mailed letter to Mother was "return[ed] to sender" and marked "not deliverable as addressed[;] unable to forward." [Capitalization altered.]

It thus appears Mother has not kept her attorney adequately apprised of changes to her mailing address. Nor has Mother notified this court of changes to her mailing address; indeed, she has not contacted the court at any time. Although the record indicates a transient lifestyle, Mother nonetheless bore the responsibility to notify her counsel—or, if she intended to represent herself, she bore the responsibility to notify this court—of changes

Nonetheless, to protect Mother's right to counsel, we review Counsel's brief to ensure that it reflects the conscientious evaluation of the record required under *Anders*, and we independently examine the record to determine if any arguable, nonfrivolous grounds for appeal exist. *See K.M.*, 98 S.W.3d at 775–76 (discussing rationale behind *Anders* procedures and requirements); *cf. also Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). Having completed both tasks, we conclude that Counsel's brief meets the *Anders* requirements[10] and that no arguable grounds for appeal exist. *See Anders*, 386 U.S. at 744, 87 S. Ct. at 1400; *see also In re M.G.*, No. 02-21-00149-CV, 2021 WL 4319708, at *1–2 (Tex. App.—Fort Worth Sept. 23, 2021, no pet. h.) (mem. op.) (conducting similar *Anders* analysis and reaching similar conclusion); *In re W.J.*, No. 02-20-00275-CV, 2021 WL 62132, at *1–2 (Tex. App.—Fort Worth Jan. 7, 2021, no pet.) (mem. op.) (same).

---

to her contact information. *Cf.* Tex. R. App. P. 9.1(b) (requiring unrepresented parties to sign filings and provide a mailing address).

[9]DFPS notified us that it would not file a brief.

[10]Although portions of Counsel's *Anders* brief are conclusory—such as Counsel's discussion of Mother's trial objections and his discussion of whether her trial counsel rendered effective assistance—our review of the record reveals that such conclusory briefing merely reflects the absence of any arguable grounds for reversal on these bases.

6

### III. Conclusion

We affirm the trial court's order terminating Mother's parental rights to the Children.[11]

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: October 28, 2021

---

[11]Counsel did not move to withdraw and shall continue representing Mother. *See In re P.M.*, 520 S.W.3d 24, 27–28 (Tex. 2016) (order); *In re C.J.*, 501 S.W.3d 254, 255 (Tex. App.—Fort Worth 2016, pet. denied). Counsel noted in his brief that he intends to move to withdraw as appellate counsel in the Texas Supreme Court.