# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00740-CR

---

**Timothy Carlton Johnson, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY
NO. 20-00068-2, THE HONORABLE BURT CARNES, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Timothy Carlton Johnson of the offense of criminal trespass and the trial court sentenced him to 150 days in county jail. *See* Tex. Penal Code § 30.05(a). Johnson's court-appointed counsel on appeal has filed a motion to withdraw and a brief pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967). The brief meets the requirements of *Anders* by presenting a professional evaluation of the record demonstrating why there are no arguable grounds to be advanced. *See id*. at 744-45; *see also Penson v. Ohio*, 488 U.S. 75, 81–82 (1988); *Garner v. State*, 300 S.W.3d 763, 766 (Tex. Crim. App. 2009). Counsel has certified to this Court that he has provided Johnson with a copy of the motion and brief, advised him of his right to examine the appellate record and file a pro se response, and supplied him with a form motion for pro se access to the appellate record. *See Kelly v. State*,

436 S.W.3d 313, 319-20 (Tex. Crim. App. 2014).  Johnson has filed a pro se response disputing that the appeal is frivolous.[1]

Upon receiving an *Anders* brief, we must conduct a full examination of the record to determine whether the appeal is wholly frivolous.  *See Penson*, 488 U.S. at 80; *Bledsoe v. State*, 178 S.W.3d 824, 826–27 (Tex. Crim. App. 2005); *Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991).  The record reflects that the State charged Johnson with intentionally and knowingly entering the property of Danielle Rivers without her effective consent and with notice that the entry was forbidden.  The property in question was a sports bar in Cedar Park.  At trial, the jury heard testimony from Rivers, the general manager of the bar, and two police officers who responded to Rivers's 911 call reporting the trespass.

Rivers, who testified that the owner of the bar had given her permission to make decisions for the establishment, explained that she had first encountered Johnson at the bar in 2017, when Johnson "approached the owner's wife" using offensive language.  The owner of the bar "asked him to leave" and told Johnson that "he was no longer welcome in the bar."

According to Rivers, Johnson returned to the bar "the very next day or two days later," accusing bar staff of stealing his "Swedish instrument."  Rivers "recognized him instantly" and asked Johnson to leave, taking down his phone number and telling him that they would call him if they found his instrument.  Johnson left the bar, "[b]ut instead of waiting for

---

[1]  Among other contentions in his response, Johnson claims that transcripts of two pretrial hearings held in August and October 2020 are missing from the appellate record.  When Johnson first raised this complaint, this Court abated the appeal and remanded the case to the trial court to hold a hearing on the matter.  *See Johnson v. State*, No. 03-22-00740-CR, 2023 WL 5508827, at *1 (Tex. App.—Austin Aug. 25, 2023) (per curiam) (order and mem. op., not designated for publication).  The trial court found that the August setting was an "Announcement Docket setting not a pretrial hearing," that "[t]he setting was a status check to see how the case was progressing and did not consist of any arguments or rulings" by the trial court, and that "[n]o setting, docket, or hearing was held in October 2020 in Defendant's case."

the phone call," he returned to the bar, "telling us that it was his evil twin brother that was there the night before." Johnson also asked the owner "if he was in the triad" and whether he spoke English, and he told the owner "that he was 12 and there was no way he could possibly run a bar." Rivers again asked Johnson to leave, and "[w]e also let him know that the next time that we saw him, we weren't going to be talking to him; we were just going to call" in a criminal trespass warning.

Nevertheless, Johnson returned to the bar. One of the bartenders called Rivers, told her that "there's somebody acting and behaving very strangely" who "seems to be hiding from" staff and had been "kind of rude to other customers." Rivers "got onto the cameras" and "recognized Timothy right away." She came into the back room of the bar where she had found Johnson, "approached him to leave, and he refused." After consulting with the bar owners, Rivers called the police and asked them to issue Johnson a criminal-trespass warning. The police did so. A copy of the warning, signed by Rivers, was admitted into evidence. The warning notified Johnson that he was "hereby forbidden to enter or come onto" the property of the bar, which was identified by name and address, that Johnson was "not to trespass on said property," and that his "presence on said property in the future will be reason enough to file trespass charges against" him. "[F]or probably about one or two months" after that, Rivers began seeing Johnson drive past the bar in his SUV and "shout something inaudible" or ride his bicycle on the street in front of the bar, "kind of getting close to being . . . within distance of the bar to violate the criminal trespass, but without doing it."

Then, on December 30, 2019, Rivers saw Johnson inside the bar again, "walking around and kind of doing the same thing when we called in the criminal trespass warning . . . just hiding in the corners." This time, Rivers called 911 immediately and reported the trespass to the

3

police. However, she identified the trespasser to the police as "Anthony Nathan Taylor," a man who had "received a criminal trespass warning around the same time Timothy did." Rivers explained that this was "just a moment of confusion" on her part and that she was 100 percent certain that the person in the bar that night was Johnson. She added, "All of my interactions with Mr. Johnson were very memorable. And so even though I couldn't identify him by name, I definitely knew him by appearance." Rivers identified Johnson in court as the man she had seen at the bar, and photos of the man, taken from the bar's security cameras that night, were admitted into evidence.

Officer John Bassler of the Cedar Park Police Department (CPPD) testified that while the police were enroute to the bar in response to the 911 call, "the caller reported that the subject had gone back to their vehicle that was parked in the parking lot." The caller described the vehicle as "[a] white SUV, with a taped 5 on the door" and described the subject as wearing "some type of sweat pants, a shirt with a tie and a Sharpie mark—marker on it. And a red headdress." Officer Bassler found the vehicle in the parking lot and contacted the occupant, who "was kind of agitated," "exited the vehicle," and "explained that he wasn't supposed to be at the" bar. Bassler detained and subsequently arrested the man for trespass after consulting with other officers, including CPPD Officer Josh Kimberly, who had spoken with Rivers inside the bar. Bassler identified Johnson in court as the man he had detained, and he testified that the police identification of Johnson as the trespasser was based in part on Johnson's "distinctive clothing" and "distinctive vehicle."

Officer Kimberly also testified about the investigation, and he explained that Rivers had shown him and other officers "some footage on her phone from the video cameras"

4

showing a man coming in and out of the bar, covering his face. Kimberly testified that the footage "was a good depiction of the Defendant." He explained:

> You could see him in the video. So he's shown walking into, or over there by the front door. At some point he turns towards the—kind of like to face the camera, and that's what [Rivers] screenshotted and sent over to Officer Bassler, the face. And the subject she was describing was Mr. Johnson.

At the conclusion of trial, the jury found Johnson guilty of criminal trespass as charged and the trial court sentenced him to 150 days' confinement in county jail as noted above. This appeal followed.

We have reviewed the record, counsel's brief, and the pro se response. We agree with counsel that the appeal is frivolous and without merit. We find nothing in the record that might arguably support the appeal. We grant counsel's motion to withdraw and affirm the judgment of conviction.

_____

Gisela D. Triana, Justice

Before Justices Baker, Triana, and Kelly

Affirmed

Filed: January 31, 2024

Do Not Publish