**Opinion filed November 18, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00093-CV

_____

## IN THE INTEREST OF B.L. AND D.L., CHILDREN

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 9532-CX**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court, based upon the jury's verdict, terminated the parental rights of the mother and the father of B.L. and D.L. Both parents appealed. We affirm the order of termination.

### I. *Mother's Appeal*

The mother's court-appointed counsel has filed a brief in which he professionally and conscientiously examines the record and applicable law and concludes that the appeal is frivolous and without merit. The brief meets the requirements of *Anders v. California*, 386 U.S. 738 (1967), by presenting a

professional evaluation of the record and demonstrating why there are no arguable grounds to be advanced. *See In re Schulman*, 252 S.W.3d 403, 406–08 (Tex. Crim. App. 2008); *High v. State*, 573 S.W.2d 807, 812 (Tex. Crim. App. [Panel Op.] 1978).

Counsel has provided the mother with a copy of the brief, a motion for access to the appellate record, and a letter explaining to the mother her right to review the record and file a pro se response to counsel's brief. *See Kelly v. State*, 436 S.W.3d 313, 318–20 (Tex. Crim. App. 2014). The mother has not filed a response to counsel's brief.

We conclude that the mother's counsel has satisfied his duties under *Anders*, *Schulman*, and *Kelly*. Following the procedures outlined in *Anders* and *Schulman*, we have independently reviewed the record in this cause, and we agree that the mother's appeal is without merit.

We note that, in the *Anders* brief, counsel for the mother asks this court to grant leave for him to file a motion to withdraw. However, we must decline such a request in a parental termination case because the Texas Supreme Court has held that "appointed counsel's obligations can be satisfied by filing a petition for review that satisfies the standards for an *Anders* brief." *In re P.M.*, 520 S.W.3d 24, 27–28 (Tex. 2016).

## II. *Father's Appeal*

In a single issue on appeal, the father contends that the evidence is legally and factually insufficient to support the finding that termination of his parental rights is in the children's best interest. We disagree.

### A. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2021). To terminate one's parental rights, it must be shown by clear and convincing evidence that the

parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In accordance with the jury's verdict in this case, the trial court found that the father had committed seven of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), (I), (N), (O), (P), and (Q)—and that termination of the father's parental rights would be in the best interest of the children. *See id.* § 161.001(b)(1), (b)(2). On appeal, the father does not challenge any of the seven findings made pursuant to Section 161.001(b)(1). Instead, he challenges only the best interest finding and asserts that the evidence is insufficient to support that finding.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). In that regard, we note that the trier of fact is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the

programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

## B. Evidence Presented at Trial

The record shows that the Department of Family and Protective Services received an intake from the hospital shortly after D.L.'s birth. D.L., who was stillborn but was revived approximately five minutes after his birth, had tested positive for methamphetamine and benzodiazepine. Both parents initially refused to submit to drug testing; they also refused to have their one-year-old daughter, B.L., tested for drugs. The Department obtained a court order to require the parents to have B.L. tested for illicit drugs. B.L. tested positive for methamphetamine and amphetamine. After the adversary hearing, the trial court also ordered the parents to submit to drug testing; both parents tested positive for methamphetamine and amphetamine.

The parents denied having used methamphetamine in years. They explained that their positive drug test results, as well as B.L.'s, were likely caused by exposure to their house, which, according to the parents, must have been contaminated by methamphetamine from previous tenants of the house. However, both parents repeatedly tested positive for methamphetamine while this case was pending in the trial court, and both admitted at trial that they had used methamphetamine after their children were removed from their care.

The father was not compliant with his service plan and did not regularly visit the children when he was able to do so. At the time of trial, the father was incarcerated. He had been convicted of the offense of possession of methamphetamine—an offense that he committed well after the Department had removed his children from his care. The father also had his parole revoked in a separate case. The father agreed that he was in no position to take possession of the children at the time of trial, but he did not want his parental rights to be terminated. He believed that he might get paroled in a few months and asked for an opportunity to get back on his feet so that he could have some sort of relationship with his children.

After the children were removed from their parents' care, they were ultimately placed in separate foster homes because D.L. needed specialized care. D.L. was placed with one of his nurses in a primary medical needs foster home. D.L. has cerebral palsy, and he suffers from seizures, muscle spasms, and a lack of oxygen to his brain. Because of his seizures, D.L. must be monitored at all times. D.L. must also be fed through a G-button and will likely never be able to eat by mouth. D.L. attends physical therapy, occupational therapy, speech therapy, and vision therapy, as well as frequent medical appointments. With the help of muscle relaxers, hand splints, and a "stander," two-year-old D.L. "is able to stand for two minutes if his hips are supported."

At the time of trial, B.L. was three and one-half years old. She had been placed in a foster home where she had become part of the family. All of B.L.'s needs were being met, and she was doing well in her foster home. While in that home, B.L. had made significant progress—behaviorally, developmentally, and physically. Furthermore, B.L. had developed close relationships with all of the members of her foster family, and they all loved B.L.

The Department's goal for the children is for them to be adopted by nonrelatives. B.L.'s foster parents wish to adopt her. D.L.'s foster parents, with whom he had lived for approximately sixteen months at the time of trial, were not in a position to adopt him, but they had agreed to provide long-term care for him until the Department, through 2INgage, is able to find the "right family" to adopt him. Importantly, the children's 2INgage permanency case manager testified that termination of the mother's and the father's parental rights would be in the best interest of both B.L. and D.L.

*C. Best Interest*

In light of the evidence presented at trial and applying the *Holley* factors, we hold that the trier of fact could reasonably have formed a firm belief or conviction that termination of the father's parental rights would be in the best interest of B.L. and D.L. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children (who were too young to express their desires), the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of those involved, the plans for the children by the Department, the father's long history of drug use, and the instability of the father's situation, we further hold that the evidence is legally and factually sufficient to support the finding that termination of the father's parental rights is in the best interest of both B.L. and D.L. *See id.* We defer to the findings of the trier of fact as to the children's best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot hold in this case that the findings as to best interest are not supported by clear and convincing evidence. Accordingly, we overrule the father's sole issue on appeal.

### III. *This Court's Ruling*

We affirm the trial court's order of termination.


W. STACY TROTTER

JUSTICE


November 18, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.