

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00111-CR

Lane **WOOTAN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-CR-1694
Honorable Velia J. Meza, Judge Presiding

Opinion by:   Lori Massey Brissette, Justice

Sitting:   Irene Rios, Justice
Lori I. Valenzuela, Justice
Lori Massey Brissette, Justice

Delivered and Filed: January 29, 2025

AFFIRMED

This case involves two questions. First, we must determine whether the evidence presented at trial is legally sufficient to support the jury's verdict finding Appellant Lane Wootan criminally responsible for the actions of his stepfather, which resulted in the murder of Josh Fowler. Second, we must decide whether the trial court committed reversible error by not conducting an ability-to-pay inquiry as required by Texas Code of Criminal Procedure article 42.15(a-1). We answer both questions in the negative and affirm the trial court's judgment.

## BACKGROUND

**Procedural Facts**

Wootan was indicted for murder for an offense that occurred on December 8, 2020. He was tried alongside a co-defendant, his stepfather, Williams Blankenship. After a multi-day trial, a jury found him guilty of murder and assessed punishment at twenty-two years confinement in the Texas Department of Criminal Justice – Institutional Division. He was also fined $10,000 and ordered to pay $440 in court costs.

Wootan appealed. He was initially represented by a court-appointed attorney who filed an *Anders* brief and a motion to withdraw. *See Anders v. California*, 386 U.S. 738, 744 (1967); *Kelly v. State*, 436 S.W.3d 313, 319–20 (Tex. Crim. App. 2014). As required, we conducted an independent review of the record and concluded there was an arguable ground of appeal. *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *see also Anders*, 386 U.S. at 744. Specifically, this court had not yet decided whether the trial court's failure to inquire on the record about a defendant's ability to pay a fine and costs was reversible error. We granted the original appellate counsel's motion to withdraw, abated this appeal, remanded the cause for the trial court to appoint new appellate counsel, and ordered new briefing. Wootan then retained new counsel who now present, on his behalf, the issues on appeal.

**Background Facts**

It is undisputed that, on December 8, 2020, Williams Blankenship shot Josh Fowler outside the home of Dylan Tuten, a mutual friend of both Fowler and Wootan. Earlier that day, Fowler had run Wootan off the road, allegedly angry that his father had given Wootan his dirt bike in exchange for a debt Fowler had owed Wootan. When Blankenship showed up at Tuten's home, Fowler fled. Instead of calling the police, Wootan returned home and became more and more agitated as he discussed the situation with his family. Eventually, upon finding out Fowler was at Tuten's house,

Wootan decided to go and confront him. He left home with a gun, specifically an AR-15, and a wooden club in his car. His mother and Blankenship soon followed, also armed with at least one gun.

This is where the testimony of the two main witnesses, Lance Stovall and Blankenship, diverge. Lance Stovall, who was in a relationship with Fowler's mother, testified he was with Fowler earlier in the day when Fowler ran Wootan off the road. He was also with Fowler, smoking weed at Tuten's house, when the incident in question occurred. Stovall testified Fowler heard a noise and went outside to check it out. He further testified he stayed back because he "was still hitting the bowl" (smoking), before eventually following Fowler to see what was going on. Stovall testified that when he got outside, he saw Wootan's mother bust out the back window of Fowler's Mustang. Then she approached Stovall on the back porch, brandishing the bat and saying, "So what now? You think you're all big and bad?" He testified she held him at gunpoint as Wootan and Fowler began fighting in the yard.

Stovall further testified he saw Wootan walk toward Fowler pointing an AR-15 at him, causing Fowler to back away. Wootan, at some point, turned the AR-15 around and, holding the barrel, swung it like a bat at Fowler who was able to catch it and throw it away from them. According to Stovall, Blankenship then picked up the AR-15 and handed it back to Wootan. Blankenship had another gun in a leg holster and two clubs in his hand. Stovall testified he heard Blankenship say "I got him" as he was pointing the pistol he had taken out of his leg holster at Fowler, but then Wootan hit Fowler with the club, Fowler got the club and hit Wootan in the ear, and then Wootan was able to regain the club and hit Fowler in the head twice. While Fowler was getting up from the ground after being hit, Stovall said he heard two shots fired and he saw Fowler was wounded. Stovall got his phone and told Wootan he was going to call the cops. Stovall testified

Wootan replied, "You do that, and I'll kill you." Wootan, his mother, and Blankenship then fled the scene in one of their cars, leaving Wootan's car behind. Fowler was pronounced dead at the hospital.

Blankenship testified in his own defense and contradicted Stovall's testimony. He testified he tried to calm Wootan down at home after the incident on the roadway. He said he only followed Wootan because he wanted to stop the two of them, who had grown up together, from becoming violent. Blankenship said he took his gun because he was worried about his life, Wootan's life and his wife's life. He testified he tried to calm them down and eventually got the AR-15 away from Wootan and locked it in Wootan's car.[1] As he was returning from the car, he said he heard what sounded like a bat hitting a ball and saw Wootan collapse to the ground, unconscious, with Fowler squatting over him with knife in hand. He testified that his instincts took over, and he shot Fowler without even thinking.

Blankenship testified Wootan, him, and his wife fled the scene in one car because Wootan was hurt and could not drive. But, even though Wootan had been rendered unconscious according to Blankenship, they did not take him to the emergency room. Instead, they returned home and spent the next day trying to figure out what to do. Blankenship testified he had intended to turn himself in but was picked up before he could do so. The gun he used that he had placed in his truck was gone the next day, but Blankenship stated he did not ask Wootan what happened to it.

Police were able to recover two guns—an AR-15 and a .40 Smith & Wesson—from a man named Keith Carter who they tracked down based on information gleaned from Wootan's jail calls with his fiancée. Police were also able to locate an empty holster with a magazine attached to it in an area of Cibolo Creek, which they also searched based on information from Wootan's fiancée.

---

[1] Police did not find the AR-15 in Wootan's car upon inspection at the scene.

## FAILURE TO INQUIRE ON THE RECORD

Wootan argues the trial court abused its discretion by imposing a fine and court costs in the judgment against him without conducting an ability-to-pay inquiry mandated by Article 42.15 of the Texas Code of Criminal Procedure. We disagree.

### Standard of Review and Applicable Law

Article 42.15(a-1) requires the trial court, at the time of sentencing, to hold a hearing *on the record* regarding the defendant's ability to pay any fine and costs:

> Notwithstanding any other provision of this article, during or immediately after imposing a sentence in a case in which the defendant entered a plea in open court as provided by Article 27.13, 27.14(a), or 27.16(a), a court shall inquire *on the record* whether the defendant has sufficient resources or income to immediately pay all or part of the fine and costs.

TEX. CODE CRIM. PROC. ANN. art. 42.15(a-1) (emphasis added).

### No Record of an Inquiry or Waiver

There is nothing in the record to show the trial court conducted such an inquiry on the record and, in fact, the State admits it did not. But the State asserts Wootan waived his complaint by not timely objecting to the absence of an ability-to-pay inquiry on the record. *See* TEX. R. APP. P. 33.1(a)(error preservation). The Court of Criminal Appeals recently held that an ability-to-pay inquiry is a forfeitable right. *Cruz v. State*, 698 S.W.3d 265, 269 (Tex. Crim. App. 2024). *Cruz* reasoned that "because the [Article 42.15(a-1)] inquiry is not fundamental to the functioning of our adjudicatory system," if the trial court does not conduct an ability-to-pay inquiry on the record, the defendant must timely object to preserve a complaint for appellate review. *Id.*; *see* TEX. R. APP. P. 33.1(a)(1); *Proenza v. State*, 541 S.W.3d 786, 797 (Tex. Crim. App. 2017) (noting "responsibility of asserting forfeitable rights belongs to the litigants . . . not the trial judge [and] such rights will be unavailable on appeal if not urged at trial"). Because Wootan's right to an ability-to-pay inquiry on the record is forfeitable, and he failed to timely object, he did not preserve his complaint for

appellate review. *See Cruz*, 698 S.W.3d at 269; *Proenza*, 541 S.W.3d at 797. Accordingly, we overrule Wootan's first issue.

## LEGAL SUFFICIENCY OF EVIDENCE

Wootan contends the evidence is insufficient to support the jury's verdict on the charge of murder. He specifically asserts that there is insufficient evidence to hold him criminally responsible for Blankenship shooting Fowler.

**Standard of Review and Applicable Law**

When reviewing a jury's verdict in the context of a sufficiency challenge, the question is whether, "after viewing the evidence in the light most favorable to the verdict, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Nisbett v. State,* 552 S.W.3d 244, 262 (Tex. Crim. App. 2018) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). While Wootan requests this Court consider the conflicting testimony that contradicts and fails to support the verdict, that is not our role. It is the jury, not this court sitting as a thirteenth juror, that is charged with resolving conflicts within the testimony, determining the credibility of witnesses, as well as weighing the evidence. *See Nisbett,* 552 S.W.3d at 262. Our role is simply to guard against the "rare occurrence when the factfinder does not act rationally." *Id.*

Further, it is not necessary the evidence directly prove each element, as circumstantial evidence alone can be sufficient to establish guilt. *See id.* Each fact does not need to "point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction." *Id.* (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). The jury can draw reasonable inferences from the evidence "as long as each inference is supported by the evidence presented at trial." *Carter v. State*, 620 S.W.3d 147, 150 (Tex. Crim. App. 2021) (quoting *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007)) (internal quotation marks

omitted). But, "juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Hooper*, 214 S.W.3d at 15. An inference by a factfinder "is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id.* at 16. By contrast, "[s]peculation is mere theorizing or guessing about the possible meaning of facts and evidence presented." *Hooper*, 214 S.W.2d at 16.

The sufficiency of the evidence is measured against the elements of the offense as defined by a "hypothetically correct jury charge." *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011); TEX. PENAL CODE § 19.02(c). A hypothetically correct jury charge correctly "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense." *Baltimore v. State*, 689 S.W.3d 331, 341–42 (Tex. Crim. App. 2024). The law authorized by the indictment "includes the statutory elements of the offense and those elements as modified by the indictment." *Lang v. State*, 664 S.W.3d 155, 168–69 (Tex. Crim. App. 2022) (quoting *Zuniga*, 551 S.W.3d at 733) (internal quotation marks omitted).

Section 19.02(b) of the Texas Penal Code provides a person commits murder if the person, among other things, "intentionally or knowingly causes" an individual's death or "intends to cause serious bodily injury and commits an act clearly dangerous to human life" causing an individual's death. TEX. PENAL CODE § 19.02(b)(1)–(2); *see, e.g.*, *Adames v. State*, 353 S.W.3d 854, 862 (Tex. Crim. App. 2011). Section 7.01(a) of the Texas Penal Code provides "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE § 7.01(a); *see, e.g.*, *Adames*, 353 S.W.3d at 862. A person is criminally responsible for the conduct of another if the person, among other things, "act[ed] with intent to promote or assist the commission of the

offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE § 7.02(a); *Adames*, 353 S.W.3d at 862. The indictment tracks the language of 19.02(b)(1) and (2).[2] Applying the law of the parties to the murder statute to measure sufficiency against the hypothetically correct jury charge, Wootan is criminally responsible as a party to the offense if (1) Wootan committed the murder himself or (2) Blankenship committed the murder and Wootan acted with intent to promote or assist the commission of the offense, by soliciting, encouraging, directing, aiding, or attempting to aid Blankenship to commit murder. *See* TEX. PENAL CODE §§ 7.01(a); § 19.02(b)(1)–(2); *Adames*, 353 S.W.3d at 862.

Furthermore, in determining their verdict, the jury is entitled to consider the events that took place "before, during, and after the commission of the crime." *See Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). The evidence must also be sufficient as to "an understanding and common design to commit the offense," reflecting Wootan acted with intent to promote or assist the murder, by soliciting, encouraging, directing, aiding, or attempting to aid Blankenship to commit the murder. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012); *see* TEX. PENAL CODE §§ 7.01(a). In other words, "mere presence" at a crime scene "or even flight from the scene," is insufficient. *Id.* A "jury may infer the requisite mental state from (1) the acts, words, and conduct of the defendant, (2) the extent of the injuries to the victim, (3) the method used to produce the injuries, and (4) the relative size and strength of the parties." *Rhymes v. State*, 536 S.W.3d 85, 95 (Tex. App.—Texarkana 2017, pet. ref'd) (citing *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)). Viewing the evidence in the light most favorable to the State, we must therefore

---

[2] Although "the parties theory was not plead in the indictment, both state and federal law specify that due process does not require a defendant's culpability as a party to the offense to be plead in the charging instrument." *Adames*, 353 S.W.3d at 861; *accord* TEX. PENAL CODE § 7.01 (b)–(c) (providing "[e]ach party to an offense may be charged with commission of the offense" and "each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice").

determine whether any rational trier of fact could have found Wootan guilty on this charge beyond a reasonable doubt.[3]

**The Evidence**

Viewed in the light most favorable to the verdict and assuming the jury (solely responsible for the determination of the credibility of witnesses) resolved the conflicts in the testimony between Stovall and Blankenship in favor of its verdict, the record demonstrates the following:

- Wootan was upset with Fowler for running him off the road earlier in the day;

- Blankenship was present and aware of the events earlier in the day;

- Blankenship was home when Wootan discussed the incident with his fiancée and mother;

- Neither Blankenship nor Wootan called the police to report the incident on the roadway;

- Wootan left home, armed with an AR-15 and a wooden club in his car, with the intent to confront Fowler;[4]

- Wootan's mother and Blankenship, both also armed, followed Wootan to Tuten's house;

- Neither Blankenship nor Wootan's mother called the police to warn them of the impending confrontation between Wootan and Fowler, even though Blankenship felt the need to be armed to protect his family;

- Wootan and/or his mother busted both the front and back windows of Fowler's car;

- Wootan's mother held Stovall back with a gun pointed in his direction and a club in her other hand while Wootan confronted Fowler with an AR-15;

- Blankenship retrieved and handed the AR-15 back to Wootan after he'd lost control of it;

---

[3] The trial court charged the jury as to murder, the law of parties, and criminal responsibility for the conduct of another. *See* TEX. PENAL CODE §§ 7.01(a); § 19.02(b)(1)–(2).

[4] In addition to the AR-15 that Wootan brandished during the fight with Fowler, the police found in Wootan's car another wooden bat, a live round, a spent shell casing, and a Glock 9 mm 50 round magazine drum box.

- Blankenship also handed Wootan a wooden club;

- Blankenship kept a club in his own hand and had a pistol in a leg holster;

- As Wootan and Fowler were fighting, Blankenship yelled, "I got him" and then after Wootan and Fowler traded blows with a club, Blankenship shot Fowler;

- Wootan, his mother, and Blankenship fled the scene together; and

- Wootan took action after the incident to dispose of the later-recovered guns in question.

By these facts, there is no doubt the record supports the inference that Wootan went to Tuten's house to confront Fowler and to, at the very least, inflict serious bodily injury. His stepfather took action to support him in that endeavor. Certainly, if the jury believed Blankenship, many of these facts would be in question. But, we have to assume the jury resolved the conflicts in testimony in favor of their own verdict. *See Nisbett v. State,* 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). And the fact that Blankenship is the one that shot Fowler does not make the evidence insufficient. *See* TEX. PENAL CODE §§ 7.01(a); § 19.02(b)(1)–(2); *Adames v. State*, 353 S.W.3d 854, 862 (Tex. Crim. App. 2011).

Applying our standard of review and measuring the evidence against the elements of the offense, as defined by a hypothetically correct jury charge, shows a rational trier of fact could have found beyond a reasonable doubt the State proved Wootan was criminally responsible as a party to Blankenship's murder of Fowler because Wootan acted with intent to promote or assist the commission of the offense, when he solicited, encouraged, directed, aided, or attempted to aid Blankenship to murder Fowler. *See* TEX. PENAL CODE §§ 7.01(a); § 19.02(b)(1)–(2); *Adames*, 353 S.W.3d at 862. The evidence is therefore sufficient to uphold Wootan's murder conviction. *See* Tex. Penal Code § 31.03(a); *Lang v. State*, 664 S.W.3d 155, 174–75 (Tex. Crim. App. 2022). Accordingly, Wootan's contention is overruled.

**CONCLUSION**

Because Wootan did not preserve his complaint regarding the trial court's failure to hold an ability-to-pay inquiry on the record and the evidence is legally sufficient to support the jury's verdict, we affirm the trial court's judgment.

Lori Massey Brissette, Justice

DO NOT PUBLISH