

# IN THE
# TENTH COURT OF APPEALS

### No. 10-24-00278-CV
### No. 10-24-00290-CV

### IN THE INTEREST OF T.E. AND M.E., CHILDREN
### IN THE INTEREST OF L.H., A CHILD

### From the 272nd District Court
### Brazos County, Texas
### Trial Court Nos. 23-000533-CV-272 and 23-000534-CV-272

## MEMORANDUM  OPINION

The underlying cases were tried together and concern the parental rights to three children – T.E., M.E., and L.H.   K.E. ("Mother") appeals from the trial court's order terminating her parental rights to her children, T.E. and M.E.[1]   Mother's attorney submitted a brief pursuant to *Anders v. California* contending that her appeal is frivolous, along with a motion to withdraw as her counsel.  *See Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).  C.H. ("Father") appeals from two judgments that

---

[1] The parental rights of T.E.'s unknown father were also terminated in trial court cause number 23-00533-CV-272.  T.E.'s father did not appeal.

terminated his parental rights to his children, M.E. and L.H.[2]  In his sole issue on each appeal, Father challenges the legal and factual sufficiency of the evidence to support the best-interest finding.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2).  We affirm the judgments of the trial court.[3]

## Background

On November 22, 2022, Father reported to law enforcement that Mother physically abused T.E. three days earlier.  Father also provided a written statement and a video of the incident to law enforcement.  The video depicts Mother, Father, T.E., L.H., and another child sitting on a bed.  On the video, Mother spanks T.E. multiple times before dragging T.E. off of the bed by her hair.  While T.E. is on the ground, Mother can be seen kicking T.E. in the stomach area.  Mother was arrested for the offense of injury to a child.  Bond conditions were imposed that prohibited Mother from having contact with the children, so Mother voluntarily released T.E. to live with a family member and permitted M.E. to live with Father.  L.H. also continued to live with Father.

The Texas Department of Family and Protective Services ("the Department") initially attempted to address its concerns through Family Based Safety Services.  When this attempt was unsuccessful, the Department filed petitions to terminate the parental

---

[2] L.H.'s mother was appointed sole managing conservator of L.H. in trial court cause number 23-00534-CV-272.  L.H.'s mother did not appeal.

[3] To expedite the disposition of this appeal, we use Rule of Appellate Procedure 2 to suspend operation of the submission deadlines of Rule of Appellate Procedure 39.8.  *See* TEX. R. JUD. Admin. 6.2, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. F app.; TEX. R. APP. P. 2 and 39.8.

rights of each of the parents, and M.E. and L.H. were removed from Father's care. Following a jury trial, Mother's parental rights to T.E. and M.E. were terminated based on evidence that Mother (1) knowingly placed or allowed the children to remain in conditions or surroundings which endangered the children, (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the children, and (3) failed to comply with the provisions of a court order that established the actions necessary to obtain the return of the children. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (b)(1)(E), (b)(1)(O). Father's parental rights to M.E. and L.H. were terminated pursuant to the same predicate grounds. *See id.* Termination of Mother's and Father's parental rights was also found to be in the best interest of each of their respective children. *See id.* at § 161.001(b)(2).

## Mother's Appeal

Mother's court-appointed attorney has filed a motion to withdraw and an *Anders* brief, stating his professional opinion that the appeal is without merit and that there are no arguable grounds for reversal on appeal. *See generally, Anders v. California*, 386 U.S. 738 (1967); *See In re A.S.*, 653 S.W.3d 298 (Tex. App.—Waco 2022, no pet.).

### *Anders* Brief

Counsel's brief meets the requirements of *Anders* by presenting a professional evaluation demonstrating why there are no arguable grounds to advance on appeal. *See Stafford v. State*, 813 S.W.2d 503, 510 n.3 (Tex. Crim. App. 1991). Counsel has provided us

with the appropriate facts of the case and its procedural history, and has discussed why, under controlling authority, there is no reversible error in the trial court's termination order. *See In re Schulman*, 252 S.W.3d 403, 406 n.9 (Tex. Crim. App. 2008). Further, counsel has informed us that he served Mother with a copy of his brief, informed Mother of her right to examine the appellate record, provided a form motion for *pro se* access to the appellate record lacking only the client's signature and the date, and notified Mother of her right to file a *pro se* response to his *Anders* brief. *See Anders*, 386 U.S. at 744; *Kelly v. State*, 436 S.W.3d 313, 319-20 (Tex. Crim. App. 2014); *In re A.S.*, 653 S.W.3d at 299-300. By letter, we informed Mother of her right to review the appellate record and to file a response to the *Anders* brief filed by her appellate counsel. Mother did not file a *pro se* response.

Upon receiving an *Anders* brief, we must conduct a full examination of the proceedings to determine whether the appeal is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80 (1988). Arguments are frivolous when they "cannot conceivably persuade the court." *McCoy v. Ct. of Appeals*, 486 U.S. 429, 436 (1988). We have reviewed the entire record and counsel's brief and agree that the appeal is frivolous. *See Bledsoe v. State*, 178 S.W.3d 824, 827–28 (Tex. Crim. App. 2005). We affirm the judgment of the trial court terminating Mother's parental rights to T.E. and M.E.

Motion to Withdraw

Counsel has also filed a motion to withdraw as Mother's counsel. However, a parent's statutory right to counsel under Section 107.013(a)(1) of the Texas Family Code extends through the exhaustion or waiver of "all appeals," including the filing of a petition for review in the Texas Supreme Court. TEX. FAM. CODE ANN. §§ 107.013(a)(1), 107.016(2)(B); *In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016). The Texas Supreme Court has stated that "an *Anders* motion to withdraw brought in the court of appeals, in the absence of additional grounds for withdrawal, may be premature." *In re P.M.*, 520 S.W.3d at 27. The filing of the *Anders* brief is the only ground set forth by counsel in his motion to withdraw. We therefore deny counsel's motion, and he remains counsel of record for Mother. Consequently, if Mother, after consulting with counsel, desires to file a petition for review to the Texas Supreme Court, counsel's obligations can be satisfied by filing "a petition for review that satisfies the standards for an *Anders* brief." *Id.* at 27-28.

**Father's Appeals**

Father complains that the evidence was legally and factually insufficient to prove that termination of his parental rights was in the best interest of M.E. and L.H.

AUTHORITY

The standards of review for legal and factual sufficiency in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002);

*see also In re J.F.-G.*, 612 S.W.3d 373, 381-82 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304 (Tex. 2021).

In determining the best interest of a child, a number of factors have been consistently considered which were set out in the Texas Supreme Court's opinion, *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply identifies factors that have been or could be pertinent in the best interest determination. *Id.* There is no requirement that all of these factors must be proved as a condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the children's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The *Holley* factors focus on the best interest of the children, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). And while no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the children's best interest. *In re J.M.T.*, 519 S.W.3d 258, 268 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

DISCUSSION

Evidence relating to the predicate grounds under Section 161.001(b)(1) may be relevant in determining the best interest of the children. *See In re C.H.*, 89 S.W.3d at 27-28. Father does not dispute that he endangered the physical health or emotional well-

being of M.E. and L.H. as contemplated by Subsections 161.001(b)(1)(D) and 161.001(b)(1)(E). *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (b)(1)(E); *In re C.H.*, 89 S.W.3d at 27-28. He argues that the evidence was insufficient to support the best-interest finding because "there are many steps the court could take to assuage any safety concerns" without terminating Father's parental rights. However, the existence of alternatives to termination does not preclude a finding that termination is in the child's best interest, and a separate consideration of available alternatives to termination is not required. *See T.W. v. Tex. Dep't of Fam. & Protective Servs.*, 431 S.W.3d 645, 651 (Tex. App.—El Paso 2014, no pet.).

In this case, the evidence supporting the endangerment predicate grounds is particularly relevant when considering the children's physical and emotional needs now and in the future and the physical and emotional danger to the children now and in the future. Abusive conduct by a person who lives in the child's home or with whom the child is compelled to associate on a regular basis in the home is part of the "conditions or surroundings" of the child's home. *See Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *see also* TEX. FAM. CODE ANN. § 263.307(b)(7). Even where physical abuse was not directed toward a child, the child's exposure to violence in the home undermines the safety of the home environment and is relevant when considering the best interest of the child. *See In re O.N.H.*, 401 S.W.3d 681, 685 (Tex. App.—San Antonio 2013, no pet.). Here, evidence was presented that Mother assaulted

T.E. after Father threatened to "beat" Mother if she did not "whoop" T.E. as discipline for T.E. hitting L.H. The video of this incident shows Mother pulling T.E. off of the bed by her hair and kicking her on the ground as L.H. watches nearby. Though Father stopped the abuse from progressing any further, he waited three days to report the abuse to law enforcement. Additionally, Mother characterized her relationship with Father as "toxic" in an interview with law enforcement, explaining that they frequently argued in the residence and that their arguments often progressed to shoving one another.

The basis for removal in this case centered around Father's failure to demonstrate a willingness to protect his children. Approximately one month after Mother assaulted T.E., Father requested that the trial court modify Mother's bond conditions to grant her access to the children and the home. This request was made when L.H. and M.E. were still residing with Father. Despite the trial court denying the requested modification, Father repeatedly permitted Mother to have access to the children in violation of her bond conditions. Mother was frequently observed in the vehicle with Father and the protected children when they were dropped off at school or daycare. According to the record, Mother was ultimately arrested in February of 2023 for violating her bond conditions pertaining to M.E.

The jury also heard evidence that while L.H. and M.E. were in Father's care, the Department received six new referrals for abuse and neglect of the children. On January 24, 2023, the Department received an intake alleging physical abuse of L.H. due to a

bruise observed on L.H.'s bicep. On February 4, 2023, a provider at M.E.'s daycare contacted the emergency child abuse hotline with concerns that "maybe someone had given [M.E.] something or she had been exposed to something" based on her extremely lethargic behavior. The Department later received another intake of alleged physical abuse of M.E. after she presented at daycare with visible injuries to her forehead and temple, red marks on her throat, and red or purple discoloration under her eyes and on her cheeks. Father contributed the redness on her throat to the straps on her car seat and the other injuries to M.E. falling off of the couch and possibly hitting a coffee table. However, Father refused to permit the Department to view his home so that his explanation might be corroborated.

Additionally, a reviewing court may consider in a best-interest analysis that a parent failed to comply with his court-ordered family service plan for reunification with the children. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013); *In re S.B.*, 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.). In addition to evidence of Father's failure to provide adequate proof of income, evidence was presented that he failed to obtain and maintain safe and stable housing. In particular, a representative of the Department testified to concerns that Father was continuing to give Mother access to the home just a few months prior to trial. In March or April of 2024, a representative of the Department found clothing in one of Father's closets that had recently been worn by Mother to some of her supervised visits with M.E. The Department also expressed concern that Father

was allowing one of his other children from a prior relationship, K.H., to have access to the children. K.H. was present at one of Father's visits with L.H. despite having recently been found to engage in delinquent conduct for the offense of Indecent Assault against one of his other siblings.

Finally, L.H. was seven years old and M.E. was three years old at the time of trial. L.H. was placed with her mother, a non-offending parent who demonstrated an ability and willingness to provide L.H. with a safe and appropriate home. While living with her mother, L.H. was involved with extracurricular activities and appeared to be happy. L.H. indicated to her CASA volunteer that she was excited about living with her mother and having her own room. As for M.E., the jury heard evidence that her placement was safe and appropriate, that M.E. was very happy, and that her caregivers had already started the process of obtaining their license to adopt her.

Based on the record before us, we conclude that the evidence is legally and factually sufficient to support a finding that termination of Father's parental rights was in the best interest of M.E. and L.H. Accordingly, we overrule Father's sole issue in each appeal.

## Conclusion

Having found that Mother's appeal is frivolous, and having overruled Father's sole issue in each appeal, we affirm the judgments of the trial court in each case. We deny Mother's counsel's motion to withdraw.

STEVE SMITH
Justice

Before Chief Justice Johnson,
        Justice Smith, and
        Justice Harris
Affirmed; motion denied
Opinion delivered and filed February 6, 2025
[CV06]

